**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jack Lee SCROGGINS,
Defendant–Appellant.**

No. 90–2580.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 28, 1991.

Decided Aug. 2, 1991.

Patrick Kelley, Asst. U.S. Atty. (argued), Springfield, Ill., for plaintiff-appellee.

Brian T. Otwell (argued), Morse, Giganti & Appleton, Springfield, Ill., for defendant-appellant.

Before BAUER, Chief Judge, and CUDAHY, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

A jury convicted Jack Lee Scroggins of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846. Pursuant to the United States Sentencing Guidelines (U.S.S.G. or the guidelines), the district court sentenced him to thirty-three months in prison. In this appeal, Mr. Scroggins challenges both his conviction and sentence. For the reasons set forth in this opinion, we affirm his conviction but vacate his sentence and remand for resentencing.

## I

## BACKGROUND

### A. Facts

In 1989, Mr. Scroggins was the lessee of a Springfield, Illinois, apartment that became the scene of several cocaine transactions. Early in that year, Mr. Scroggins became reacquainted with Tracy Stengel, whom he had known when Stengel lived in Springfield before moving to Chicago. Stengel told Mr. Scroggins that he had become involved in dealing drugs with a woman he had met in Chicago. (For reasons that will become apparent later in this opinion, we shall refer to this woman simply as NA.) Mr. Scroggins agreed to allow Stengel to stay in his apartment during his visits to Springfield. On approximately four occasions after Stengel began to stay at the apartment, his trips to Springfield involved narcotics transactions. For example, he and Mr. Scroggins twice went to a bar in Springfield and obtained money to buy drinks by selling small quantities of

cocaine. According to Stengel, Mr. Scroggins "was helping me push" the cocaine by telling acquaintances at the bar "how good a stuff [sic] I had." Tr. at 27.

On July 14, 1989, Special Agent Danny Reed of the Illinois State Police Division of Criminal Investigation came to Mr. Scroggins' apartment. Agent Reed was introduced to Mr. Scroggins and Stengel as "Mark," a potential cocaine customer who was trying to buy three or four ounces for resale. Mr. Scroggins told Agent Reed that "the stuff was good, something to that effect, because he had tried it himself." Id. at 201. Stengel indicated to Agent Reed that he had to call NA in Chicago to determine the price. Stengel advised Agent Reed to tell NA that he was a co-worker of Mr. Scroggins. Stengel and Agent Reed left the apartment and went to a pay telephone. Stengel made a call to NA, indicated that "Mark" was a friend of Mr. Scroggins, and tentatively arranged a sale of four ounces of cocaine at $1,250 per ounce.

Agent Reed returned to Mr. Scroggins' apartment on July 18, 1989. Stengel indicated that NA was on her way to Springfield with cocaine. In Mr. Scroggins' presence, Stengel and Agent Reed negotiated the price of the cocaine. After Stengel indicated that NA now wanted $400 per quarter ounce—a higher price than Agent Reed originally had accepted—Mr. Scroggins suggested that the cocaine would be relatively pure. Stengel told Agent Reed that the latter could find him at Mr. Scroggins' apartment or that Mr. Scroggins would know how to contact him. Agent Reed later provided Stengel a pager number so that he could be contacted when the cocaine arrived.

After NA arrived in Springfield, Agent Reed returned to Mr. Scroggins' apartment in the early hours of July 19, 1989. Also present were Mr. Scroggins, Stengel, and Angela Hernandez, a friend of NA who had accompanied her from Chicago. Mr. Scroggins indicated awareness that Agent Reed had come in response to the call to his pager number. Agent Reed purchased one-eighth ounce of cocaine for $250. NA gave Stengel $50 from the sale, and Stengel later gave Mr. Scroggins $20 "for partying on." Id. at 38.

After he had purchased the cocaine, Agent Reed was asked whether he smoked marijuana. Because undercover agents are not supposed to use drugs even when dealing with narcotics traffickers, Agent Reed answered in the negative and thus aroused the suspicion of NA. According to Agent Reed's testimony, the following exchange then occurred: "At that point when I refused the marijuana, she turned to Scroggins … and said, 'You do know him,' is what she says to him. And he nodded his head." Id. at 230. The conversation then turned to plans for future cocaine transactions.

Agent Reed next returned to Mr. Scroggins' apartment on July 24, 1989. At this time, only NA was at the apartment. Agent Reed tried to arrange another purchase of cocaine, but no details were finalized. Several days later, Agent Reed called NA in Chicago and asked to purchase eight ounces of cocaine. The large increase in the proposed purchase again aroused NA's suspicion that Agent Reed might indeed be an undercover officer. Agent Reed then "backed off" until returning to Mr. Scroggins' apartment on August 15, 1989. Id. at 239. In the presence of Mr. Scroggins and Stengel, Agent Reed negotiated a two-ounce purchase with NA, which was to be consummated the next day. However, Agent Reed was unable to make the purchase on the 16th.

Agent Reed next contacted NA in Chicago on August 22, 1989, and they arranged a two-ounce cocaine transaction that was completed at Mr. Scroggins' apartment later that day. Before completing the sale, NA and Stengel checked Agent Reed for recording devices—although he was wearing one, they did not find it—while Mr. Scroggins sat near Agent Reed, pointing an unloaded shotgun at him. NA gave Mr. Scroggins $100 out of the $2,500 she received for the cocaine.

Finally, on August 30, 1989, Agent Reed called NA and tried to arrange a purchase of fourteen ounces of cocaine. NA, who

apparently was prepared to sell about five ounces (approximately 140 grams), replied that she would have to contact Mr. Scroggins. She called the defendant just before leaving Chicago to inform him that she was coming to Springfield to make the sale. After she arrived in Springfield, NA dropped Stengel off at Mr. Scroggins' apartment with five ounces of cocaine for Agent Reed. When Stengel entered the apartment, he found Mr. Scroggins asleep. Agent Reed then arrived, viewed the cocaine, and arrested Stengel. Mr. Scroggins also was arrested at the apartment.

## B. District Court Proceedings

A grand jury indicted Mr. Scroggins along with Stengel, NA, and Angela Hernandez for conspiracy to distribute cocaine (Count One). NA and Hernandez were named in Count Two, which charged distribution of cocaine, and Stengel was indicted in Count Three for possession of an unregistered firearm. The indictment was dismissed as to Hernandez before trial. Stengel pled guilty to Counts One and Three, and NA pled guilty to Count One. The government agreed to recommend sentences in the lower half of the applicable guideline range for both Stengel and NA.

NA agreed to testify against the defendant. The government filed a motion *in limine* stating that NA had filed an *ex parte* motion in which she asked to be examined by a psychiatrist as part of her own sentencing proceedings. Although the district court had sealed NA's motion, the government represented that it had learned that NA sought the examination because she may have had a sex change operation. The government's motion asked the court to prohibit Mr. Scroggins from questioning NA about this topic. The court granted the government's motion and denied Mr. Scroggins' companion motion to unseal NA's *ex parte* motion. Both NA and Stengel testified against Mr. Scroggins at his trial, which resulted in his conviction for conspiracy to distribute cocaine.

Following his conviction, Mr. Scroggins was sentenced pursuant to the guidelines. At a sentencing hearing held on July 9, 1990, Mr. Scroggins raised four objections to the presentence report. First, he contended that he should not be held responsible for the entire 197.9 grams of cocaine involved in the three transactions that occurred at his apartment. Specifically, he argued that he could not reasonably have foreseen the attempt to sell the 140 grams involved in the aborted sale of August 30, 1989, the date of his arrest. Second, Mr. Scroggins objected to a proposed two-level increase in his base offense level for possession of a firearm. Next, he objected to the failure to recommend a four-level decrease in his base offense level for his minimal role in the offense. Finally, Mr. Scroggins contended that he should receive a downward departure due to his minimal participation and his cooperation with the government following his arrest. The district court overruled all four objections.

The court thus found that Mr. Scroggins' base offense level was 18, which was increased to 20 because of his possession of a firearm. His criminal history category was I, resulting in a sentencing range of thirty-three to forty-one months. The court sentenced Mr. Scroggins to thirty-three months.

## II

## ANALYSIS

### A. Challenges to Conviction

#### 1. Pretrial motions

In his brief, Mr. Scroggins touches on several alleged errors by the district court in its handling of the pretrial motions concerning NA's possible sex change operation. In essence, his position is that the district court abused its discretion by foreclosing potential avenues of impeachment of NA, a key witness against Mr. Scroggins. He acknowledges, however, that "the sexual orientation of a witness generally will not be the subject of proper impeachment." Appellant's Br. at 28 (citing *United States v. Colyer*, 571 F.2d 941, 946 n. 7 (5th Cir.) (homosexual orientation irrelevant to credibility), *cert. denied*, 439 U.S. 933, 99 S.Ct. 325, 58 L.Ed.2d 328 (1978); Fed.R.Evid. 608). Mr. Scroggins insists

that he "sought to inquire of [NA] as to her sexual identity not for the purposes of impugning her moral character but rather to determine whether she was masquerading as a woman when she in fact was not." *Id.* at 28–29.

We find no abuse of discretion on the record before us. The district court is authorized to "exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to ... protect witnesses from harassment or undue embarrassment." Fed.R.Evid. 611(a). Even if we were to acknowledge that NA's sexual identity had any potential relevance to her credibility, we would not conclude that the court erred in protecting NA from the much more obvious potential of such harassment and embarrassment.[1] Furthermore, Mr. Scroggins had ample opportunity to attack NA's credibility on other, more relevant, grounds. For example, on cross-examination, NA acknowledged that her recommended sentence pursuant to her plea agreement was contingent on her testifying against Mr. Scroggins—the only remaining defendant who had not pled guilty or had charges dismissed. With such obvious impeachment material available to Mr. Scroggins, the district court certainly was not obligated to permit a line of questioning that was more likely to distract the jury than to inform it of relevant evidence.

### 2. Sufficiency of evidence

Mr. Scroggins contends that the government failed to present sufficient evidence to sustain his conviction for conspiracy to distribute cocaine. As this court has noted many times, those who raise sufficiency of evidence challenges bear a "heavy burden." *E.g., United States v. Valencia,* 907 F.2d 671, 676 (7th Cir.1990). "The test is whether, after viewing the evidence in the light most favorable to the government, *'any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Pritchard,* 745 F.2d 1112, 1122 (7th Cir. 1984) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)); *accord United States v. Lamon,* 930 F.2d 1183, 1190 (7th Cir.1991).

As Mr. Scroggins acknowledges, a defendant indicted for conspiracy also may be convicted on an aiding and abetting theory. *See United States v. Galiffa,* 734 F.2d 306, 312 (7th Cir.1984). Because the jury was so instructed, we shall examine the evidence in terms of aiding and abetting liability.[2] To sustain a conviction for aiding and abetting a conspiracy, there must be substantial evidence [3] that the defendant knowingly " 'was associated with a criminal venture, participated in it as something he wished to bring about, and sought by his actions to make it succeed.'" *Id.* at 311 (quoting *United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938)).[4]

Mr. Scroggins asks this court to conclude, in effect, that he was no more than a passive observer of the narcotics transactions that occurred at his apart-

1. *Cf. United States v. Masters,* 924 F.2d 1362, 1368 (7th Cir.) (no reversible error when district court limited cross-examination concerning witness' acknowledged habit of wearing women's underwear in case in which female victim's body had been found without panties; details of the "fetish would have been spicy, but peripheral to the issues because there was no suggestion that violence was an aspect of the fetish"), *cert. denied,* — U.S. —, 111 S.Ct. 2019, 114 L.Ed.2d 105 (1991). The cross-examination prohibited in regards to NA's sexual identity was much more peripheral than the cross-examination that this court held properly limited in *Masters.*

2. *Cf. United States v. Valencia,* 907 F.2d 671, 676–77 (7th Cir.1990) (analyzing sufficiency of

evidence challenge to conviction for attempted possession with intent to distribute in aiding and abetting terms).

3. In *United States v. Durrive,* 902 F.2d 1221, 1228 n. 5 (7th Cir.1990), this court held that an appellate court "should review challenges to the sufficiency of evidence of a conspiracy's existence and an individual defendant's connection to the conspiracy under the same 'substantial evidence' standard we apply to sufficiency challenges in nonconspiracy criminal appeals."

4. The government need not charge or prove an overt act to sustain a drug conspiracy conviction under 18 U.S.C. § 846. *See United States v. Brown,* 934 F.2d 886, 889 (7th Cir.1991).

ment. However, during his trial, the jury heard substantial evidence for it rationally to conclude beyond a reasonable doubt that he had aided and abetted the charged conspiracy. First, there was considerable evidence that Mr. Scroggins had promoted Stengel's cocaine sales by touting his illegal wares to potential customers, including Agent Reed.[5] Admittedly, without more, an idle comment that a batch of cocaine is "good stuff" would be insufficient to support a conviction. But, in this case, there was more. The jury could have reasoned that Mr. Scroggins sought to further the conspiracy when he reassured NA that he knew Agent Reed after the first cocaine sale. Moreover, testimony that Mr. Scroggins held an unloaded firearm pointed at Agent Reed while the latter was searched for recording devices certainly supports an inference that Mr. Scroggins was more than a passive observer of the conspiracy. Indeed, this evidence, along with the fact that he allowed Stengel and NA to use his apartment to conduct their drug transactions, would permit a rational jury to conclude that Mr. Scroggins was an integral part of the conspiracy. We conclude that there is no basis for overturning the jury's verdict in this case.

### B. *Challenges to Sentence* [6]

■ Mr. Scroggins raises several challenges to his sentence, only two of which

5. Mr. Scroggins points out that the events at the Springfield bar where he allegedly helped Stengel sell cocaine to pay for their drinks were not part of the charged conspiracy. Nonetheless, the jury reasonably could have inferred that Mr. Scroggins' efforts to help Stengel "push" cocaine there by praising its quality indicated his intent in commenting to Agent Reed on the quality of the cocaine during negotiations at Mr. Scroggins' apartment.

6. Between the time of Mr. Scroggins' offense and the date of his sentencing, several relevant guidelines and application notes were amended. Under 18 U.S.C. § 3553(a)(4) and (5), the district court was obligated to apply the versions in effect at the time of his sentencing. *See United States v. Franz,* 886 F.2d 973, 977 n. 2 (7th Cir.1989); *United States v. Restrepo,* 903 F.2d 648, 655–56, *reh'g en banc granted,* 912 F.2d 1568 (9th Cir.1990); *United States v. Woolford,* 896 F.2d 99, 102 (5th Cir.1990). There is no contention in this case that such retroactive

merit extended discussion.[7] First, he renews his objection that the 140 grams of cocaine involved in the aborted transaction on the day of his arrest should not have been considered when determining his base offense level. Second, he again contends that he deserved a reduction in his offense level due to his minimal or minor role in the offense.

### 1. Base offense level

■ The essence of Mr. Scroggins' challenge to the calculation of his offense level is that, because the first sales to Agent Reed involved relatively small amounts, "there was no evidence that Defendant had any reason to believe" that 140 grams would be involved in the final transaction that preceded his arrest. Appellant's Br. at 30. Because this challenge involves a disputed factual determination, we review the district court's decision under the clearly erroneous standard. *See United States v. Guerrero,* 894 F.2d 261, 265 (7th Cir.1990); 18 U.S.C. § 3742(e). Under the guidelines, a convicted conspirator is responsible for the conduct of his coconspirators as long as such conduct was "in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3 *Application Note* 1; *see Guerrero,* 894 F.2d at 266.

application raises *ex post facto* concerns. *Cf. United States v. Scott,* 914 F.2d 959, 961 n. 2 (7th Cir.1990) (in absence of objection, applying guidelines in effect at time of commission of crime because amended guidelines in effect at time of sentencing would have resulted in higher base offense level).

7. Mr. Scroggins has not renewed his objection to the two-level increase in his offense level for possession of a firearm. *See* U.S.S.G. § 2D1.1(b)(1). His suggestion that U.S.S.G. § 5K2.0 (Grounds for Departure (policy statement)) should apply to his case is unsupported by any reasoned argument or legal authority and thus is waived. Finally, based on our review of the sentencing transcript, we find no merit to Mr. Scroggins' assertion that he was punished for his "exercise of his right to jury trial" because he received a longer sentence than either Stengel or NA, both of whom pled guilty and cooperated with the government. Appellant's Br. at 31.

The district court's determination of Mr. Scroggins' base offense level is not clearly erroneous. The guidelines' concept of reasonable foreseeability does not require that a coconspirator be aware of the precise quantity involved in each of an ongoing series of illegal transactions.[8] There is ample evidence in the record to support a conclusion that Mr. Scroggins knew that NA had arranged to consummate yet another cocaine sale to Agent Reed at his apartment on August 30, 1989. Furthermore, Mr. Scroggins had met Agent Reed several times, the latter posing as a drug dealer from Florida. Because Agent Reed claimed to be buying cocaine for resale, it was reasonable to foresee that he would attempt to arrange a large-quantity purchase from NA. Indeed, one of the prior negotiations had involved three or four ounces, an amount not significantly less than the five ounces Stengel tried to sell to Agent Reed on August 30th. Mr. Scroggins has pointed to no evidence that would necessitate a conclusion that he had agreed to be involved only in small-scale cocaine sales.

### 2. Role in the offense adjustment

 Finally, Mr. Scroggins contends that the district court erred in failing to reduce his offense level because of his allegedly minimal or minor role in the charged conspiracy. Such reductions are governed by section 3B1.2.[9] We review the district court's determination of eligibility for section 3B1.2 reductions under the clearly erroneous standard. *See, e.g., United States v. Hagan*, 913 F.2d 1278, 1283 (7th Cir.1990) (citing cases).

 As the district court recognized, four-level reductions for minimal participation should be given only "infrequent-

---

8. *Application Note* 1 a to U.S.S.G. § 1B1.3 provides the following analogous illustration:
 Defendant A, one of ten off-loaders hired by Defendant B, was convicted of importation of marihuana, as a result of his assistance in off-loading a boat containing a one-ton shipment of marihuana. Regardless of the number of bales of marihuana that he actually unloaded, and notwithstanding any claim on his part that he was neither aware of, nor could reasonably foresee, that the boat contained this quantity of marihuana, Defendant A is held accountable for the entire one-ton quantity of marihuana on the boat because he aided and abetted the unloading, and hence the importation, of the entire shipment.

9. This guideline provides:
 Based on the defendant's role in the offense, decrease the offense level as follows:
 (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
 (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels. In cases falling between (a) and (b), decrease by 3 levels.
 U.S.S.G. § 3B1.2.
 Mr. Scroggins invites this court to compare his "role in the alleged conspiracy" to that of the coconspirators and "to the average participant in such a conspiracy." Appellant's Br. at 31. As our colleagues in the Ninth Circuit recently noted, the case law indicates some ambiguity as to the appropriateness of the latter criterion in making a determination under U.S.S.G. § 3B1.2. *See United States v. Andrus*, 925 F.2d 335, 338 (9th Cir.1991); *see also United States v. Howard*, 894 F.2d 1085, 1088 (9th Cir.1990). That ambi- guity seems, however, more semantical than substantive. As the plain wording of the guideline dictates, the ultimate focal point must be on the conduct of the defendant. *See United States v. Valencia*, 907 F.2d 671, 687 (7th Cir.1990). That conduct cannot be assessed by a mere hypothetical analogy to conduct described in an application note. *See id.; see also United States v. Buenrostro*, 868 F.2d 135, 138 (5th Cir.1989), *cert. denied,* — U.S. —, 110 S.Ct. 1957, 109 L.Ed.2d 319 (1990). Rather, as Judge Patrick Higginbotham has put it, the trial judge must "take into account the broad context of the defendant's crime." *Buenrostro*, 868 F.2d at 138. Section 3B1.2 "turns upon culpability" and "[c]ulpability is a determination requiring sensitivity to a variety of factors." *Id.* This comprehensive assessment must include a comparison of the acts of each participant in relation to the relevant conduct for which the participant is held accountable under U.S.S.G. § 1B1.3. *See United States v. Daughtrey*, 874 F.2d 213, 216 (4th Cir.1989). It must also measure "each participant's individual acts and relative culpability against the elements of the offense of conviction." *Id.* In assessing the defendant's conduct against this "objective standard," the sentencing judge's knowledge of previous cases necessarily plays a role. *Id.* After assessing the relevant conduct of each participant, both in relation to each other and in relation to the elements of the offense, the sentencing judge may well come to the determination that each defendant, while playing a substantially different role, had a relatively equal, albeit different, impact on the societal interests protected by the criminal proscription. In such a situation, no adjustment is appropriate. *See U.S.S.G.* § 3B1.4.

ly." U.S.S.G. § 3B1.2 *Application Note* 2. The court also noted the significance of "the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others [as] indicative of a role as minimal participant." *Id. Application Note* 1. The court concluded that

> I don't think that we can say under the state of this evidence that we heard at trial or that is presented here in the presentence report that it can't [sic] be said that Mr. Scroggins was unaware of the scope of the enterprise or the activities of his co-defendants, and allowed his residence to be used for several drug transactions and was present on several of those occasions. He also attested to the high quality of the drug.

Sentencing Tr. at 10. The court thus denied Mr. Scroggins' request for a four-level reduction under section 3B1.2(a).

There is adequate evidence in the record to support each of the factors cited by the district court.[10] In light of our earlier analysis regarding Mr. Scroggins' challenges to the sufficiency of the evidence and to the determination of his base offense level, we find no clear error in the court's conclusion that Mr. Scroggins was not a minimal participant.

**10.** Moreover, the court also could have cited evidence that Mr. Scroggins held a gun on Agent Reed while his coconspirators searched him for recording devices. Even though the gun was not loaded, this is not the conduct of a *minimal* participant.

**11.** "[A] minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 *Application Note* 3.

**12.** *See* Appellee's Br. at 21; *see also United States v. Boyer,* 931 F.2d 1201, 1205 (7th Cir. 1991) (affirming denial of minor-participant reduction because "Boyer—not Gayan—pursued the contact with Green, the ultimate buyer. Gayan was unacquainted with Green before Boyer interceded and set up the transaction between the two."); *United States v. Brick,* 905 F.2d 1092, 1095 (7th Cir.1990) ("A person who directs a buyer to a seller cannot be considered a minor participant because that person ·also plays an important role in the distribution of the drugs."). *But cf. United States v. Hagan,* 913

Nonetheless, our review of the sentencing proceedings leaves us uncertain whether the ·district court considered giving Mr. Scroggins a two-level decrease as a *minor* participant.[11] This failure to articulate reasons for giving any section 3B1.2 decrease at all is troubling because even the prosecutor acknowledged that Mr. Scroggins' "participation was more minimal than" that of coconspirators NA and Stengel. Sentencing Tr. at 14. Furthermore, the court itself indicated that Mr. Scroggins "may have had a peripheral role" in the conspiracy. *Id.* at 21.

We recognize that the court took Mr. Scroggins' relative culpability into account in sentencing him to the minimum sentence under the applicable guideline range. Moreover, the government contends that Mr. Scroggins introduced Agent Reed to NA and thus merited no minor-participant reduction because he introduced the parties to the narcotics transaction.[12] However, it is unclear from the record of the sentencing proceedings whether the district court credited that evidence.[13] It is not appropriate for this court to substitute its judgment for that of the district court. Accordingly, we must vacate Mr. Scroggins' sentence so that the district court may give fuller consideration to his eligibility for a two-level reduction as a minor participant.

F.2d 1278, 1283 (7th Cir.1990) (defendant lived briefly "at the house located on the farm where nearly 60,000 marijuana plants were being cultivated. He knew that marijuana was being grown in the field and helped advance the ends of the conspiracy by picking weeds from around the plants."); *United States v. Valencia,* 907 F.2d 671, 687 (7th Cir.1990) (court did not err in awarding minor-participant reduction to defendant who participated extensively in constructing a "sophisticated storage compartment" to hide large quantities of cocaine); *United States v. Guerrero,* 894 F.2d 261, 269 n. 5 (7th Cir.1990) (defendant who made numerous cocaine deliveries was "correctly characterized ... as a minor participant").

**13.** It appears from the trial record that a friend of Mr. Scroggins introduced Agent Reed to Mr. Scroggins and Stengel at the same time. *See* Tr. at 28. Stengel, in turn, made the call to NA that began the negotiations between Agent Reed and NA. Admittedly, NA testified that Scroggins introduced Agent Reed to her. But this "introduction" occurred *after* the phone call from Stengel. *See id.* at 130–31.

## Conclusion

For the foregoing reasons, the conviction of Mr. Scroggins is affirmed, but his sentence is vacated and his case remanded to the district court for resentencing.

AFFIRMED IN PART AND VACATED AND REMANDED IN PART.