**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Leonard AGEE, Defendant–Appellant.**

**No. 94–2440.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 1, 1995.

Decided May 9, 1996.

---

Ralph M. Friederich, Deirdre Dubrorow (argued), Office of U.S. Atty., Criminal Div., Fairview Heights, IL, for plaintiff-appellee.

Michael C. Just (argued), Chicago, IL, for defendant-appellant.

Before CUMMINGS, CUDAHY, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

Leonard Agee pled guilty to one count of conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, and one count of possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). He was initially sentenced by the district judge to 70 months of incarceration on both counts, to be served concurrently. Agee's sentence was later reduced to 60 months. Agee appeals his sentence, claiming he was entitled to a reduction for his minimal or minor role in the conspiracy. We remand for further determinations by the district court.

## I.

On February 20, 1993, an Illinois State Trooper stopped a Ford rental car, driven by Agee, for speeding. One of Agee's co-defendants, Leroy Braxton, was a passenger in the car. Agee told the officer that the car had been rented in California and that they were en route to Ohio. The officer asked for and received verbal and written consent to search the car. The trooper found close to five kilograms of cocaine behind the back seat. Agee was charged with conspiring with co-defendants Leroy Braxton and Leroy Eric Braxton (the Braxtons are father and son) to distribute cocaine and with possession with intent to distribute cocaine.

On March 21, 1994, after several unsuccessful motions to suppress, Agee plead guilty to the charges against him. The plea was an "open plea," i.e., there was no written plea agreement. At the change of plea hearing, the judge sought to confirm that Agee's

plea was knowing and voluntary.[1] The judge discussed with Agee the rights he was foregoing (such as his right to a trial by jury, to testify, and to confront and compel witnesses) and the possible consequences of his plea under the Sentencing Guidelines. The judge also reminded Agee of his right to appeal, under some circumstances, any sentence imposed. Agee was informed that a presentence investigation report ("PSI") had to be prepared, upon which the judge would base his sentence, and that he would have an opportunity to object to any of the conclusions in the PSI.

A PSI was prepared and a sentencing hearing was held on June 2, 1994. The PSI determined Agee's Sentencing Guideline range to be 78 to 97 months, based on a total offense level of 28 and criminal history category of I. Agee's primary objection to the PSI was that it did not recommend an offense level reduction for his minimal or minor role in the conspiracy under U.S.S.G. § 3B1.2. The government stipulated to the following relevant facts set forth in Agee's written objection and recited by defense counsel at the hearing: 1) Agee never expressly agreed to help the Braxtons transport cocaine from California to Ohio, though he "knew" what the Braxtons were doing and went along; 2) Agee never received any money for the trips he made for the Braxtons, though he was promised $500 for each trip; 3) Agee never saw the cocaine; 4) he did not help hide the cocaine in the car; 5) Agee never knew how much cocaine they were carrying; 6) his fingerprints were not found on the cocaine, though one of the Braxtons' prints was; 7) Agee did not know and never contacted any of the people involved in selling the cocaine to the Braxtons—Leroy Eric Braxton had the California contacts; and 8) Agee did not know to whom the cocaine was going to be sold to in Ohio. Defense counsel argued that these facts entitled Agee to a four, three, or two-level offense reduction for his minimal or minor role in the conspiracy. Agee therefore requested a 60 month term—

the statutory mandatory minimum. The government objected to the mitigating role reduction because Agee admitted that he had made a previous trip to California to transport cocaine for the Braxtons (so this was not a one time incident) and that he was to receive cash payments from the Braxtons.

The trial court overruled Agee's objections and adopted the factual findings and guideline application recommendation in the PSI, although the court did grant Agee an additional offense level reduction for acceptance of responsibility. Thus, the court determined Agee's sentencing range to be 70 to 87 months and sentenced him to the lowest possible term of 70 months. In refusing to grant an offense level reduction based upon Agee's role in the offense, the court stated:

> I think Mr. Agee clearly cannot claim a 4 level reduction for minimal participation. He made more than one trip involved in the importation of cocaine from California to Ohio. He knew what was going on. *He may not have been at the higher level of the conspiracy, but when one goes to sorting out the roles played by various participants in a conspiracy, you get into some gray and fuzzy areas as to exactly what role is played.* Of course, it's very clear if someone is the leader of it that is easy, and if ... they unloaded a barge of marijuana on one occasion, then that too is an easy assignment, but where there has been a participant, as is this case, of the nature that was Mr. Agee's involvement, I don't believe that Mr. Agee qualifies for either a minimal or minor reduction....

(emphasis added).

The government asserts that, at some point after sentencing, Agee verbally agreed to waive his right to appeal if the government would file a Rule 35(b) motion requesting the court to reduce Agee's sentence from 70 to 60 months. Under Rule 35(b), the government may move to reduce a defendant's sentence for his substantial assistance to the government.[2] The agreement was

1. Federal Rule of Criminal Procedure 11 dictates that before accepting any guilty plea, the trial court must discuss with the defendant a host of issues, including the waiver of certain constitu-

tional rights, and must ensure that the plea is voluntary. FED.R.CRIM.P. 11.

2. Criminal Rule of Procedure 35(b) provides: "The court, on motion of the Government made

apparently negotiated through Agee's counsel and the Assistant U.S. Attorney. On June 8th, 1994, defense counsel sent a letter to the prosecutor confirming the agreement they had reached. There was, however, no written agreement or other documentation signed by Agee indicating his knowledge or understanding of the agreement or his consent to the terms of the deal. Agee filed his notice of appeal on June 10, 1994—at this point the government had not yet filed its 35(b) motion. On July 13, 1994, the government did move to reduce Agee's sentence 10 months for his substantial cooperation, and on July 14th the court reduced Agee's sentence to 60 months. The government's motion did not mention that the reduction was in exchange for Agee's waiver of his right to appeal; it only represented that it was for his substantial assistance. There is, therefore, no evidence that the trial judge was aware of this collateral, post-plea agreement.

Once the government had fulfilled its part of the agreement, Agee's attorney prepared a Motion to Dismiss Appeal and mailed acknowledgement and consent to waiver of appeal forms to Agee on July 15, 1994. Upon receiving no response from Agee, his counsel again sent the dismissal forms to him on August 4, 1994. On August 19, 1994, defense counsel moved to withdraw as Agee's appointed counsel. In her motion, counsel explained that she had reached the verbal understanding with the government with Agee's "express consent," that the government had fulfilled its part of the bargain, and that Agee now refused to honor his part of the agreement. She requested that a new attorney be appointed, since she could not "in good conscience participate in Defendant–Appellant's effort to violate his agreement with the government." Defense counsel's motion was granted, and this appeal followed. Agee appeals only the district court's denial of any offense level reduction for his role in the conspiracy.[3]

## II.

As a preliminary matter, the government asserts that we lack jurisdiction over this appeal because Agee waived his right to appeal. We thus begin by addressing the government's waiver argument before reaching the merits of Agee's contention that he was entitled to an offense level reduction for his minimal or minor role in the conspiracy.

## A.

■ Waivers of appeal as part of plea agreements are generally enforceable. *United States v. Wenger*, 58 F.3d 280, 281 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 349, 133 L.Ed.2d 245 (1995). The waiver, however, must have been made knowingly and voluntarily. *Id.* at 281–82; *United States v. Schmidt*, 47 F.3d 188, 190 (7th Cir.1995); see also *United States v. Hendrickson*, 22 F.3d 170, 174 (7th Cir.) (waiver of right to appeal "must be express and unambiguous"), cert. denied, —— U.S. ——, 115 S.Ct. 209, 130 L.Ed.2d 138 (1994); *United States v. Bushert*, 997 F.2d 1343, 1351 (11th Cir.1993), cert. denied, —— U.S. ——, 115 S.Ct. 652, 130 L.Ed.2d 556 (1994); *United States v. Melancon*, 972 F.2d 566, 567 (5th Cir.1992); *United States v. Marin*, 961 F.2d 493, 496 (4th Cir.1992). Through the letters and representations of defense counsel, the

within one year after the imposition of the sentence, may reduce a sentence to reflect a defendant's subsequent, substantial assistance in the investigation or prosecution of another person who has committed an offense, in accordance with the guidelines...." Agee had made two proffers of information to a prosecutor and a DEA special agent on March 2, 1994 and May 5, 1994.

3. We note that Agee's final sentence was 60 months, which is the statutory mandatory minimum. This does not, however, make his appeal of the role reduction issue moot. If the court had granted Agee a two, three, or four-level reduction for a minimal or minor role, 60 months would have been within the sentencing range that the court could have imposed; it would have been the lowest possible sentence under the statute. The court could then have departed downward 10 months from this statutory minimum in granting the government's motion to reduce for substantial cooperation. See 18 U.S.C. § 3553(e). Therefore, if Agee was entitled to a minimal or minor role reduction, it is possible that Agee's final sentence would have fallen below 60 months. See *United States v. Burnett*, 66 F.3d 137, 140 (7th Cir.1995) (defendant can appeal "discounted" sentence if initial sentence, i.e., the starting point for the downward departure, was based on legal error).

government has established that an agreement existed, at least between defense counsel and the prosecutor, that Agee would waive his right to appeal in exchange for a 10–month reduction in his sentence. The next inquiry is therefore to ascertain whether the record "clearly demonstrates" that Agee personally entered into the agreement and waived his right to appeal knowingly and voluntarily. *Schmidt,* 47 F.3d at 190 ("Obviously a waiver will be upheld only if the record clearly demonstrates that the defendant knowingly and voluntarily entered into [it]."). Based on the evidence currently in the record, we cannot confidently answer this question.

■ Several circuits have concluded that, in most circumstances, the only way to insure that a waiver of the right to appeal is knowing and voluntary is to require a colloquy between the judge and the defendant expressly addressing the appeal waiver. *See Bushert,* 997 F.2d at 1351–52; *Marin,* 961 F.2d at 496 (4th Cir.1992).[4] However, we have held that a specific dialogue with the judge is not a necessary prerequisite to a valid waiver of appeal, if there is other evidence in the record demonstrating a knowing and voluntary waiver. *See Wenger,* 58 F.3d at 282–83; *see also United States v. DeSantiago–Martinez,* 38 F.3d 394, 395 (9th Cir. 1992), *cert. denied,* —— U.S. ——, 115 S.Ct. 939, 130 L.Ed.2d 883 (1995). For example, if there is express waiver of appeal language in the plea agreement and the agreement as a whole was accepted following a Rule 11 colloquy, we have held the waiver was knowing and voluntary. *Wenger,* 58 F.3d at 282–83. We have also intimated, in dicta, regarding a jury trial waiver that evidence of a discussion between the trial judge and defense counsel directly confirming that the waiver is knowing and voluntary may be sufficient to prove a valid waiver. *See United States v. Robinson,* 8 F.3d 418, 423 (7th Cir.1993).[5] And the fact that we dismiss filed appeals upon a defendant's execution of an express written consent form signals that we would uphold a signed, express written waiver of appeal as knowing and voluntary. *See* Circuit Rule 51(d).[6] *See also Wenger,* 58 F.3d at 282 ("Most waivers are effective when set out in writing and signed....").

---

4. These courts would have the discussion as part of the colloquy already required in the plea agreement context by FED.R.CRIM.P. 11. *See supra* n. 1.

5. In *Robinson,* the defendant appealed the imposition of criminal forfeiture penalties, claiming that he did not knowingly and voluntarily waive his statutory right to a jury on the forfeiture issues. 8 F.3d at 420. Finding the record essentially silent on whether Robinson's waiver was knowing and voluntary, we remanded the case to the district court for a hearing on the issue. *Id.* at 425. The record contained no signed waiver form and no colloquy with the judge. The government directed us to a discussion between defense counsel, the prosecutor, and the judge that indirectly implied that the waiver was knowing and voluntary on Robinson's part. We found this evidence insufficient, however, because Robinson's attorney did not specifically inform the judge that he had discussed the right to a jury trial with his client and that Robinson had personally and voluntarily made the decision to forego the right. *Id.* at 423. We noted that if such a conversation had taken place, then "[w]e would be in a position to find waiver...." *Id.* We noted again later in the opinion that comments by counsel that he had obtained a knowing and voluntary waiver may be sufficient to support a valid waiver. *Id.* at 425. We read this later

statement as referring to comments by defense counsel *to the trial court,* as discussed earlier. When there is a direct and specific discussion between defense counsel and the trial court regarding the waiver, the court can make the inquiries necessary to be confident that the defendant understood the right he or she was waiving and willingly relinquished it. Also, we can then be assured that the agreement was evaluated by an unbiased, uninterested party, i.e., the trial court, who has a special duty to ensure that the rights of defendants are not unwittingly and involuntarily waived. *See United States v. Baty,* 980 F.2d 977, 979 (5th Cir.1992), *cert. denied,* 508 U.S. 956, 113 S.Ct. 2457, 124 L.Ed.2d 672 (1993). Thus, we do not read *Robinson* to imply, nor do we intend to imply today, that *any* statements by counsel will be sufficient to uphold a jury trial waiver or a waiver of appeal. The representations to the court must convincingly demonstrate that the waiver was indeed knowing and voluntary.

6. Circuit Rule 51(d) provides: "[I]f the convicted person consents to dismissal of the appeal after consultation with appellate counsel, the appeal may be dismissed upon the filing of a motion accompanied by an executed acknowledgment and consent...." The rule is designed to ensure that the defendant is aware of his right to appeal and deliberately forswears it. *See Johnson v. United States,* 838 F.2d 201, 203 (7th Cir.1988).

In the case before us, we have no colloquy between Agee and the trial judge regarding the waiver of appeal specifically, or the post-plea agreement in general. The waiver of appeal was not a term of the original plea agreement that Agee verbally accepted before the trial court, in accordance with FED. R.CRIM.P. 11. On the contrary, at the plea hearing, the court expressly called Agee's attention to his right to appeal. We have no express written waiver of appeal signed by Agee. We also lack any discussion between the trial judge and defense counsel confirming that the waiver of appeal was knowing and voluntary. In fact, the trial court was apparently not even aware that this post-plea agreement existed. The government represented in its motion to the court that it was seeking the reduction in sentence for Agee's substantial assistance, and nothing more.

The only evidence available regarding the nature of the waiver are the representations of defense counsel, in a letter and a motion to withdraw, that the verbal agreement was reached with Agee's "express consent." However, even if we accept as true that the defendant was aware of the agreement and consented to it, we are still left with a void we cannot ignore. Counsel's statements do not indicate that Agee actually understood the bargain he supposedly accepted. They are not equivalent to a declaration that Agee's right to appeal was explained to him and that he understood it, nor do they tell us anything about the voluntariness of Agee's consent. Additionally, defense counsel's comments are not the kind we envisioned

would be sufficient in *Robinson*—they do not directly speak to knowledge and voluntariness, and they were not made in a setting where a judge could further inquire into the circumstances surrounding the agreement and waiver. *See supra* n. 4; *Robinson*, 8 F.3d at 423.

All of this is not to deny that the record at this stage does arguably support the conclusion that Agee's waiver was knowing and voluntary. Defense counsel's statements and her ultimate withdrawal do imply that the waiver was valid. In addition, one could read a negative inference into Agee's silence on appeal, i.e., the fact that Agee did not submit any affirmative statement or affidavit claiming that the waiver was unknowing or involuntary may indicate that it was not. We decline, however, to find a knowing and voluntary waiver of such an important right based on arguable implications and inferences alone,[7] *see Robinson*, 8 F.3d at 423–25, especially when the government could have easily procured an express waiver in writing or in court. The government instead chose to rely on a verbal waiver elicited without court approval, involvement, or awareness; and as a result, we are left with a record that does not "clearly demonstrate" whether Agee's waiver was knowingly and voluntarily made. Given this backdrop, we believe the proper course is to remand the case to the district court for a hearing on the issue, since it may still be possible to glean further and more reliable information from either the defendant or defense counsel about the circumstances surrounding the agreement.[8] *Id.*

7. Furthermore, the evidence also arguably supports the conclusion that Agee did not understand the agreement and did not intend to waive his right to appeal. The motion submitted by the government stated that the reduction in sentence was for Agee's substantial cooperation. Without knowing more about whether, and under what circumstances, the agreement was explained to Agee, it is very possible that Agee was under the impression (as apparently the district court was) that his cooperation was in fact the reason for the reduction and that he still had his right to appeal. This possibility is supported by Agee's request to his counsel to file a notice of appeal and his refusal to dismiss his appeal pursuant to Circuit Rule 51(d). Finally, one could read Agee's silence on appeal as indicating a belief that a statement from him was unnecessary, since there is no evidence in the record that

clearly demonstrates that his waiver was knowing and voluntary. In other words, as the record stands, we are unable to confidently say whether we are dealing with a defendant who is trying to have his cake and eat it too or a defendant who simply did not knowingly and voluntarily waive his right to appeal.

8. On remand, we envision that a valid waiver might be demonstrated through more direct and detailed questions to defense counsel regarding the circumstances and discussions surrounding the waiver. Under *Robinson*, the trial judge would have to be convinced by this further inquiry that Agee's waiver was in fact knowing and voluntary in order to uphold the waiver. *See supra*, n. 5. Although such statements by defense counsel to the trial court should preferably take place during the initial trial court proceedings,

at 425; *United States v. Stevens*, 66 F.3d 431, 437 (2d Cir.1995) (remanding where no evidence that stipulation containing waiver of appeal was knowing and voluntary).

## B.

■ In the interest of avoiding a subsequent appeal and remand on an issue that has been fully briefed, should the district court find Agee did not waive his right to appeal, we address the merits of Agee's argument that the court erred in refusing to reduce his sentence under U.S.S.G. § 3B1.2. Agee claims that he was entitled to either a four-level reduction for his minimal role in the conspiracy, a three-level reduction for his minimal-to-minor role, or a two-level reduction for his minor role.[9] We review the district court's conclusion with respect to § 3B1.2 reductions under the clearly erroneous standard. *United States v. Gutierrez*, 978 F.2d 1463, 1471 (7th Cir.1992); *United States v. Scroggins*, 939 F.2d 416, 423 (7th Cir.1991); *United States v. Hagan*, 913 F.2d 1278, 1283 (7th Cir.1990).

■ The Guidelines commentary explains that a minimal participant is identified by his "lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others...." U.S.S.G. § 3B1.2 *Application Note* 1. Further, the designation is reserved for those "who are plainly among the least culpable of those involved in the conduct of a group," *id.*, and is to be used "infrequently." *Id. at Application Note* 2. The district court specifically found that "Mr. Agee clearly cannot claim a 4 level reduction for minimal participation. He made more than one trip involved in the importation of cocaine from California to Ohio. He knew what was going on." These findings were taken straight from the stipu-

lated facts. Agee admitted that he "knew" what was going on—he understood that the Braxtons were buying and selling cocaine, and he was familiar with the players in the conspiracy and their roles. He knew who was responsible for buying the cocaine in California (Leroy Eric Braxton), who was responsible for transporting it (himself and Leroy Braxton), and who was responsible for selling it (both of the Braxtons). And, as the district court pointed out, Agee admitted that he was a repeat player in the conspiracy. Therefore, we cannot say that the district judge clearly erred in essentially determining that Agee knew the basic scope and structure of the conspiracy and therefore was not entitled to a four-level reduction for his minimal participation.

■ According to the Guidelines, a minor participant "means any participant who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2 *Application Note* 3. In support of his minor participant status, Agee presented the undisputed facts that he never saw the cocaine, did not help hide the cocaine, did not know how much cocaine was involved, did not know who the cocaine was purchased from or who it was being sold to, and did not actually get paid for the trips he made. Although it is unclear whether the district court was still discussing Agee's claim for minimal role status or had moved on to his minor role claim, all that was said prior to denying the minor role reduction was:

> He may not have been at the higher level of the conspiracy, but when one goes to sorting out the roles played by various participants in a conspiracy, you get into some grey and fuzzy areas as to exactly what role is played.... "[W]here there has been a participant, as is this case, of

the *Robinson* court demonstrated by its remand for further discussions with counsel that such post-hoc testimony by defense counsel may be sufficient to establish a valid waiver. *Robinson*, 8 F.3d at 425. Of course, if further statements by defense counsel are in fact offered, the trial court may direct that testimony be received from Agee.

**9.** Section 3B1.2 of the Sentencing Guidelines provides:

Based on the defendant's role in the offense, decrease the offense level as follows:
(a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
(b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
In cases falling between (a) and (b), decrease by 3 levels.

the nature that was Mr. Agee's involvement, I don't believe that Mr. Agee qualifies for either a minimal or minor reduction...."

This denial of the minor participant reduction is troubling because the court states Agee "may not have been at the higher level of the conspiracy," yet fails to state what evidence it credits in denying the minor role reduction or what evidence it chooses not to credit in reaching its decision. *See Gutierrez*, 978 F.2d at 1471; *Scroggins*, 939 F.2d at 424. It is not clear how the court evaluated or weighed the evidence Agee presented to it.

The court did seem to take into account Agee's lower relative culpability in sentencing him to the lowest sentence in the applicable range. And possibly the court determined that Agee's role as a courier was not minor because he was charged only with conspiracy to distribute the close to five kilos that he was actually found transporting. In other words, Agee was not being held responsible through the relevant conduct rules for the acts of others or for the crimes of a much larger conspiracy. *See United States v. Burnett*, 66 F.3d 137, 140–41 (7th Cir. 1995). However, the trial court did not fully explain why the minimal-to-minor (three-level) and minor (two-level) reductions were denied, and we cannot substitute our judgment for that of the trial court. Thus, if the court finds that Agee did not waive his right to appeal, we vacate Agee's sentence and direct the court to more fully consider and articulate its reasons for deciding to deny the minimal-to-minor and minor role reductions. *See Gutierrez*, 978 F.2d at 1471 (remand for fuller consideration of minor role reduction); *Scroggins*, 939 F.2d at 424 (same). Of course, if the district court concludes that Agee did knowingly and voluntarily waive his right to appeal, the court need not reconsider the role reduction issue.

The case is thus REMANDED for a finding of whether Agee waived his right to appeal, and upon that determination, for action consistent with the above opinion.