KANNE, Circuit Judge.
As part of a Drug Enforcement Administration (“DEA”) undercover operation, private investigator Domingo Alvarez spoke with Jesus Padilla on the telephone and Padilla told Alvarez that he had a friend who would sell two kilograms of cocaine for $30,000 per kilogram. Padilla explained to Alvarez that his friend’s normal price was $34,000 per kilogram, but he had reduced the price to $30,000 in the interest of doing future transactions with Alvarez.
After they had arranged a deal, Alvarez met Padilla and they went to a bar to meet Padilla’s supplier. Padilla met Felipe Martin inside the bar, and returned to Alvarez’s car with Martin to inform Alvarez that the cocaine was ready and that he *1466 should get his friend and bring the money. Alvarez had told Padilla on their drive to the bar that another man, undercover Special Agent Rafael Tovar, had the money for the cocaine. After Alvarez returned to the bar with Agent Tovar, Jose Medina arrived. All five men then left the bar to go to Medina’s apartment to obtain the cocaine— Medina and Padilla in one car, Martin and Agent Tovar in another, and Alvarez by himself. When they arrived at the apartment, Alvarez stayed outside. Agent To-var had arranged to test the quality of the cocaine before Alvarez brought in the money.
Two men, later identified as Candelario Gutierrez and Jose Soto, were sitting on a couch in the living room of the apartment when the men arrived. Agent Tovar asked Medina about the men, and Medina replied, “They’re nobody.” When Medina asked “Where’s the package?”, Gutierrez replied “In there” and pointed downward toward the compartment of the coffee • table in front of the couch. Soto uncrossed his legs and pointed toward the compartment with his foot and stated, “In there.”
Medina opened the door of the compartment of the coffee table and removed a package. Agent Tovar asked Gutierrez whether the cocaine was “rerock,” a diluted form of cocaine, and Gutierrez laughed and replied that it was not. Agent Tovar asked Gutierrez how much cocaine they could provide him on a weekly basis because he wanted a steady source of supply, and Gutierrez replied that they could provide ten to twelve kilograms per week. After Agent Tovar examined the cocaine, which Medina had removed from the package, Medina told Tovar to get the money from Alvarez. Tovar directed Padilla to get Alvarez, but Soto stated “No, just you go,” indicating that Tovar should get the money. Tovar asked to use the telephone so that he could call Alvarez on his beeper, but was told there was no telephone. Padilla then went to get Alvarez. As he left, Tovar gave the arrest signal from an electronic device that he was wearing. Surveillance DEA agents arrested Gutierrez, Medina, Soto, Padilla and Martin. A search revealed that Gutierrez had a fully-loaded semi-automatic .45 pistol in the waistband of his pants, with the hammer pulled back and the safety lever on. Two bricks of cocaine were recovered from the house, each weighing approximately two and a half ounces.
Candelario Gutierrez, Jose Soto and Jose Medina, along with two co-defendants, were charged in a two-count indictment with conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846, and with possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1). A superseding indictment was filed two months later, which added a third count charging Gutierrez, Soto and Medina with using and carrying a firearm during and in relation to the commission of a drug offense, in violation of 18 U.S.C. § 924(c). Medina pleaded guilty to Counts 1 and 2. A bench trial was conducted on Count 3 with regard to Medina, and he was found guilty on that count. After a jury trial, Gutierrez and Soto were found guilty on all three counts. Pursuant to the Sentencing Guidelines, the district court sentenced Medina to concurrent terms of 70 months imprisonment on Counts 1 and 2, and a consecutive term of five years on Count 3, for a total sentence of ten years and ten months. Gutierrez and Soto were both sentenced to concurrent terms of 78 months imprisonment on Counts 1 and 2, and a consecutive term of five years imprisonment on Count 3, for a total of eleven and a half years each. On appeal, Gutierrez, Soto and Medina challenge their convictions on numerous grounds, and Soto argues that the district court erred in sentencing him.[1] We affirm the defendants’ convictions, but remand to the district court for resentencing of Soto. Gutierrez
Gutierrez contends that the superseding indictment was insufficient to charge him with knowingly using or carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). He filed a pre-trial motion to dismiss the count on the basis that it *1467 failed to explicitly allege that his use of the firearm during the drug transaction was knowing. In denying the motion, the district court noted that knowledge is an essential element of a § 924(c) offense and found that the indictment tracked the statute. See United States v. Padilla, 751 F.Supp. 761, 762 (N.D.Ill.1990). The district court found that the statutory terms “using or carrying” and “during and in relation to” necessarily include a knowledge requirement. Id. Therefore, the court concluded that the scienter requirement need not be explicitly stated in the indictment because the pleading “fairly imported” knowledge. Id. (citing United States v. Wilson, 884 F.2d 174, 179 (5th Cir.1989)). We agree.
The express terms of § 924(c) prohibit a defendant from using or carrying a firearm during and in relation to a crime of violence or drug trafficking offense. United States v. Edun, 890 F.2d 983, 986 (7th Cir.1989). The statute is violated where “the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime____” United States v. Rosado, 866 F.2d 967, 970 (7th Cir.), cert. denied, 493 U.S. 837, 110 S.Ct. 117, 107 L.Ed.2d 79 (1989) (citation omitted). As the district court stated, “[c]learly, a person cannot have possession or control of a firearm and allow the firearm to play a role in the crime unless the person knew of the firearm’s existence.” Padilla, 751 F.Supp. at 762.
Contrary to Gutierrez’s assertion, the legal theories set forth in United States v. Pupo, 841 F.2d 1235 (4th Cir.), cert. denied, 488 U.S. 842, 109 S.Ct. 113, 102 L.Ed.2d 87 (1988), and United States v. Hawkins, 741 F.Supp. 1234 (N.D.W.Va.1990), are not controlling. In Pupo, the Fourth Circuit held that “an indictment is defective if it fails to allege elements of scienter that are expressly contained in the statute that describes the offense.” 841 F.2d at 1239 (emphasis added). However, the relevant statute in this case, § 924(e), does not state a scienter requirement. See Wilson, 884 F.2d at 178 (noting the general rule of construction that “knowledge of the facts constituting the offense is implied where a statute does not expressly mention any mental element”). In Hawkins, which involved § 924(c), the district court noted this distinguishing characteristic of Pupo. 741 F.Supp. at 1235. In that case, the defendant was unaware of the firearm’s presence in the glove compartment of a stolen car. Therefore, the circumstances of the case did not show that the firearm facilitated or had a' role in the crime. Here, however, Gutierrez’s possession and control of the cocked and loaded firearm is undeniable considering that he carried it in the waistband of his pants. The indictment sufficiently charged Gutierrez with the § 924(c) offense.
In addition, Gutierrez’s counsel stated during closing argument that the jury was required to find that Gutierrez had “some intent to facilitate the drug crime with the gun,” and the jury was instructed that to find Gutierrez used or carried the firearm in relation to the offense it must find that he knowingly possessed the firearm during the offense with the intent to facilitate the commission of the offense. It is clear that both Gutierrez and the jury were aware of the scienter required for commission of the § 924(c) offense.

Medina

Medina argues that the district court erred in convicting him of the firearm offense pursuant to the rule of Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), that co-conspirators are liable for overt acts of every other conspirator done in furtherance of the conspiracy. See United States v. Gironda, 758 F.2d 1201, 1211 (7th Cir.), cert. denied, 474 U.S. 1004,106 S.Ct. 523, 88 L.Ed.2d 456 (1985); At the close of the evidence in his bench trial on the firearm count, Medina argued that he was not liable for Gutierrez’s possession of a firearm during the drug transaction simply by virtue of being a co-conspirator. The district court rejected this argument pursuant to Pinkerton and our decision in United States v. Diaz, 864 F.2d 544 (7th Cir.1988), cert. denied, *1468 490 U.S. 1070, 109 S.Ct. 2075, 104 L.Ed.2d 639 (1989). The district court subsequently-denied Medina’s motion- for a new trial. We agree with the district court’s reasoning.
In Pinkerton, the Supreme Court held that because the overt acts of one conspirator are attributable to all co-conspirators, the same or other acts in furtherance of the conspiracy are likewise attributable to the others for the purpose of holding them responsible for the substantive offenses. 328 U.S. at 647, 66 S.Ct. at 1184. An exception to this rule applies when the act was “merely a part of the ramifications of the plan which could not be reasonably foreseen as a necessary or natural consequence of the unlawful agreement.” 328 U.S. at 647-48, 66 S.Ct. at 1184.
In Diaz, we affirmed the principle that a firearm violation under § 924(c) may be imputed to other members of the conspiracy under Pinkerton, unless the crime could not have been reasonably foreseen as a necessary or natural consequence of the agreement. 864 F.2d at 549. The illegal drug industry is a dangerous and violent business, and when an individual conspires to take part in a transaction involving a large quantity of cocaine (such as the kilogram worth $39,000 in Diaz) it is reasonably foreseeable that a firearm would be carried. Id. See United States v. Allen, 930 F.2d 1270, 1275 (7th Cir.1991) (in holding co-conspirator liable for conspirator’s possession of a firearm during a drug transaction under Pinkerton, we noted that, “The possession of weapons is all too common in the course of drug dealing.”); see also United States. v. Ocampo, 890 F.2d 1363, 1372 (7th Cir.1989) (co-conspirators held liable for a conspirator’s § 924(c) offense); Gironda, 758 F.2d at 1211 (co-conspirators convicted under § 924(c) for firearm carried by a conspirator in the waistband of his pants). The defendants agreed to sell two kilograms of cocaine for $60,000; therefore, it was reasonably foreseeable that a gun would be carried in relation to the illegal transaction.
■ Medina argues that the district court erred in reading the Pinkerton rule as mandatory — that it had no choice but to find him guilty of the firearm charge. Medina misconstrues the district court’s statements. Although the district judge stated that he did not agree with the law, he read the permissive language in Diaz— “each.conspirator may be liable for acts of every other conspirator done in furtherance of the conspiracy” — to the parties. Id., 864 F.2d at 549. Moreover, after reading the exception that a co-conspirator may be held liable unless the crime could not be reasonably foreseen as a necessary or natural consequence of -the unlawful agreement, the district judge stated “[a]nd this is what decided the case for me.” There was no error.

Soto

Soto contends that the evidence is insufficient to prove that he conspired to distribute cocaine. He alleges that there are three principles which preclude his conviction — the “bystander” principle, the “familial connection” principle, and the “buyer-seller” principle. He also argues that if the evidence is insufficient to show his participation in the conspiracy, then the evidence is also insufficient to prove that he possessed the cocaine as alleged in Count 2.
Soto acknowledges that a defendant has a heavy burden in challenging the sufficiency of the evidence with regard to his participation in a conspiracy. United States v. Nesbitt, 852 F.2d 1502, 1509 (7th Cir.1988), cert. denied, 488 U.S. 1015, 109 S.Ct. 808, 102 L.Ed.2d 798 (1989). The standard of review to be applied is whether there is substantial evidence connecting the defendant to the conspiracy. Allen, 930 F.2d at 1274; United States v. Durrive, 902 F.2d 1221, 1228-29 (7th Cir.1990). We will review the evidence and all the reasonable inferences that can be drawn from the evidence in the light most favorable to the government. Allen, 930 F.2d at 1274. We must determine whether any rational trier of fact could have concluded that the defendant was guilty of the crimes charged beyond a reasonable doubt.. Id. (citation omitted). We will overturn the verdict “only when the record is devoid of any *1469 evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt.” Id. (citation omitted). Circumstantial evidence may be used to demonstrate both a conspiracy and the defendant’s participation in the conspiracy. United States v. Diaz, 876 F.2d 1344, 1352 (7th Cir.1989); Durrive, 902 F.2d at 1225 (circumstantial evidence may be sole support for a conspiracy conviction).
A conspiracy is defined as “a combination or confederation of two or more persons formed for the purpose of committing, by their joint efforts, a criminal act.” Nesbitt, 852 F.2d at 1509. To join a conspiracy, a person must know of the agreement and must intend to join it. U.S. v. Townsend, 924 F.2d 1385, 1390. Soto contends that he did not know of the agreement or participate in it. He notes that he was not involved in the pre-deal negotiations, that Medina referred to him as “nobody” in response to Agent Tovar’s inquiry, that Padilla and Martin denied knowing him, that he did not reply to Agent Tovar’s question about the availability of more cocaine, that he was not armed, that he was a first offender and did not lead a drug dealer’s lifestyle, and that he did not handle the cocaine.
In order to be part of the conspiracy, Soto had to know that there was an agreement to sell the two kilograms of cocaine and agree to participate in the sale. When Medina asked about the location of the cocaine, Soto knew where the cocaine was, and answered “In there,” pointing to the compartment of the coffee table. Soto argues that his actions only mimicked Gutierrez’s actions, and that there is no evidence he knew what was in the package. Soto testified at trial, but the jury was not required to believe his self-serving assertions. The credibility of witnesses is within the province of the jury, and our review is prohibited absent extraordinary circumstances. United States v. de Soto, 885 F.2d 354, 367 (7th Cir.1989); Diaz, 876 F.2d at 1354.
Agent Tovar tested the cocaine in Soto’s presence, and its price and quality were discussed. Agent Tovar testified at trial that Soto did. not appear surprised about the transaction. When Agent Tovar asked Padilla to get Alvarez and the money, Soto directed Agent Tovar to get the money. The jury could- infer from this evidence that Soto knew there was an agreement to sell cocaine and that he agreed to participate. in that sale. See Townsend, 924 F.2d at 1390 (jury could reasonably infer defendant’s participation in conspiracy from circumstantial evidence); Diaz, 876 F.2d at 1354 defendant was present during transaction, brought drugs to the deal, and observed transaction take place); United States v. Blanton, 884 F.2d 973, 978 (7th Cir.1989) (defendant carried drugs and drug money, and made statements concerning drug dealing). Further, it could reasonably be inferred that Soto and- Gutierrez brought the cocaine to the apartment — they were in the apartment when the other men arrived and they knew the location of the cocaine. - “ ‘There is no requirement that the participants in the plan personally know the individuals involved as long as the conspiracy continues and the goal is to achieve a common objective.’ ” Diaz, 876 F.2d at 1352 (quoting United States v. Boucher, 796 F.2d 972, 975 (7th Cir.1986)).
The evidence indicates that Soto was not a mere bystander. “[Wjhile ‘mere presence at the scene of the crime or mere association with conspirators will not themselves support a conspiracy conviction- ... presence or a single act will suffice if the circumstances permit the inference that the presence or act was intended to advance the ends of the conspiracy.’ ” Diaz, 876 F.2d at 1352 (quoting United States v. Mancillas, 580 F.2d 1301, 1308 (7th Cir.), cert. denied, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978)); Blanton, 884 F.2d at 979. Soto stated and pointed to the location of the cocaine, witnessed the transaction, and instructed Agent Tovar to get the money for the cocaine.
Soto also argues that he was at Medina’s apartment because Gutierrez is his cousin. The fact that Soto and Gutierrez are cousins does not invalidate Soto’s guilt. See Townsend, 924 F.2d at 1389 (the *1470 evidence need not exclude every reasonable hypothesis of- innocence so long as the total evidence permits a conclusion of guilt beyond a reasonable doubt); Diaz, 876 F.2d at 1353 (same). This is not a case were the “familial connections” principle applies, see United States v. de Soto, 885 F.2d 354, 367 (7th Cir.1989) (familial association implies close relationship such as husband and wife, or siblings), and Soto was not coincidentally visiting a relative’s home during a drug deal — the sale occurred at Medina’s apartment.
Finally, the “buyer-seller” principle does not preclude Soto’s conspiracy conviction. See United States v. Thompson, 944 F.2d 1331, 1342 (7th Cir.1991) (“a mere sale of drugs is insufficient to establish a conspiratorial agreement beyond the agreement inherent in the sale itself”), cert. denied, — U.S. —, 112 S.Ct. 1177, 117 L.Ed.2d 422 (1992); Townsend, 924 F.2d at 1394 (additional evidence is required beyond the sale indicating that the defendant’s actions were intended to bring about the object of the conspiracy). During the pre-deal negotiations, Padilla told Alvarez that his supplier had reduced the price of the cocaine in the interest of doing future deals with Alvarez. The defendants then agreed to sell two kilograms of cocaine for $60,000 to Agent Tovar and Alvarez. Agent Tovar inquired about the future availability for additional amounts of cocaine because he wanted a steady source of supply, and Gutierrez replied that they could provide ten to twelve kilograms a week. This evidence indicates that the cocaine was sold for re-sale rather than personal consumption. See United States v. Canino, 949 F.2d 928, 941 (7th Cir.1991) (setting forth the factors which can be considered in determining whether drugs are for personal use or distribution), cert. denied, — U.S. —, 112 S.Ct. 1701, 118 L.Ed.2d 410 (1992); United States v. Douglas, 818 F.2d 1317, 1321 (7th Cir.1987) (same). The record is sufficient to establish Soto’s participation in the conspiracy to distribute cocaine.
Soto also argues that the evidence is insufficient to show that he possessed the cocaine. We disagree. Reasonable inferences can be drawn from the record indicating that Soto exhibited possession and control over the cocaine. See United States v. Garrett, 903 F.2d 1105, 1112 (7th Cir.) (constructive possession is sufficient to support a conviction under 21 U.S.C. § 841(a)), cert. denied, — U.S. —, 111 S.Ct. 272, 112 L.Ed.2d 227 (1990). Soto sat near the cocaine when the other men arrived at the apartment; he demonstrated where the cocaine was located; he instructed that Agent Tover get the money to pay for the cocaine; and he was present during the entire transaction. Moreover, it could be inferred that Soto and Gutierrez brought the cocaine to the apartment.
Finally, Soto contends that the evidence is insufficient to support his liability for the firearm offense. Given the sufficiency of the evidence showing Soto’s participation in the conspiracy and the adequacy of the Pinkerton instruction given by the district judge with regard to the firearm count,[2] we conclude that a jury reasonably could have found Soto guilty of the offense under Pinkerton. United States v. Troop, 890 F.2d 1393, 1399 (7th Cir. 1989); United States v. Paiz, 905 F.2d 1014, 1025 (7th Cir.1990), cert. denied, — U.S. —, 111 S.Ct. 2278, 114 L.Ed.2d 729 (1991).
At his sentencing, Soto requested a two to four level downward departure for his minimal role or minor role in the drug transaction. See Guideline § 3B1.2 (four-level decrease in offense level if defendant was a minimal participant in the criminal activity and two-level decrease if defendant was a minor participant). In denying Soto’s request for a four-level reduction, the district court found that Soto’s words and actions during the drug transaction indicated he had knowledge of the partici *1471 pants in the group and understood the activities of the group and therefore he was not a minimal participant. A defendant plays a minimal role in the concerted activity if he is among the least culpable of those involved in the conduct of a group. The defendant’s lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant. Guideline § 3B1.2, Application Note 1.
Soto does not argue that the district court’s finding that he was not a minimal participant was error; however, he contends that the district court erred in failing to consider whether he was a minor participant. “[A] minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal.” Guideline § 3B1.2, Application Note 3. We agree.
We review the district court’s determination of eligibility for § 3B1.2 reductions under the clearly erroneous standard. United States v. Scroggins, 939 F.2d 416, 423 (7th Cir.1991); see, e.g., United States v. Hagan, 913 F.2d 1278, 1283 (7th Cir.1990) (citing cases). As in Scroggins, “our review of the sentencing proceedings leaves us uncertain whether the district court considered giving [the defendant] a two-level decrease as a minor participant.”' 939 F.2d at 424. Moreover, like the district court in Scroggins, the district court took Soto’s relative culpability in the conspiracy into account in sentencing him to the minimum sentences under the applicable Guideline ranges. The government merely contends that there was “no acknowledgment, from ... the district court, that Soto’s role was more minimal than that of any of his co-conspirators,” and notes that it was argued at trial that Soto and Gutierrez had obtained the cocaine and brought it to Medina’s apartment. Similar to our finding in Scroggins, it is unclear from the record of the sentencing proceedings whether the district court credited that evidence with regard to Soto’s eligibility as a minor participant. Because we cannot substitute our judgment for that of the district court, we must vacate Soto’s sentence and remand to the district court for its consideration whether he is eligible for a two-level reduction as a minor participant. See id.
Soto’s argument that an inconsistency between 18 U.S.C. § 3553, the enabling statute for the Guidelines, and Guideline § 1B1.1 requires that he be re-sentenced has no merit. See United States v. Davern, 937 F.2d 1041 (6th Cir.1991) (stating that application of the Guidelines delegates responsibility to probation officers and reduces the responsibility of the judge for the result), vacated en banc (September 26, 1991). Soto failed to raise this issue before the district court; therefore, it was waived absent plain error. Fed. R.Crim.Pro. 52(b); United States v. Henry, 933 F.2d 553, 558 (7th Cir.1991), cert. denied, — U.S. —, 112 S.Ct. 1703, 118 L.Ed.2d 412 (1992). Notwithstanding a decreased level of discretion dictated by the Sentencing Guidelines, sentencing remains the office of judges vested with the powers granted under Article III of the Constitution. In addressing this issue in another context, we have stated that district judges retain the duty and responsibility for imposition of sentence under the Guidelines. See United States v. Jackson, 886 F.2d 838, 844 (7th Cir.1989).
Therefore, we Affirm the defendants’ convictions, but Remand to the district court for resentencing of Jose Soto in ac-' cordance with this opinion.

. The two co-defendants, Jesus Padilla and Felipe Martin, have not appealed.

. “To apply the Pinkerton doctrine, the jury must be instructed in an intelligent manner on this theory of guilt." United States v. Allen, 930 F.2d 1270, 1275 (7th Cir.1991) (citing United States v. Paiz, 905 F.2d 1014, 1025 (7th Cir. 1990)). The jury was properly instructed in this case.