12 F.3d 1101
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Mervyn T. BUTLER, Defendant-Appellant.
 No. 93-1095.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 1, 1993.
Decided Nov. 29, 1993.
 
 1
 Before CUMMINGS, Circuit Judge, COFFEY, Circuit Judge, ZAGEL, District Judge*
 
 ORDER
 
 2
 Defendant Mervyn T. Butler is appealing the entry of judgment on a jury verdict of guilty on counts of conspiracy to distribute cocaine, 21 U.S.C. Sec. 846, attempt to possess with intent to distribute cocaine, id., and using or carrying a firearm during a drug-trafficking crime, 18 U.S.C. Sec. 924(c). He also appeals the use of certain information during sentencing. The Court has jurisdiction over the appeal pursuant to 28 U.S.C. Sec. 1291. Defendant argues that the evidence does not support the verdict, that prejudicial evidence was admitted over his objection, that his use immunity agreement was violated, and that he was denied a fair trial. Because none of these arguments has merit, the entry of judgment is affirmed.
 
 Facts
 
 3
 Butler was arrested on February 20, 1992, pursuant to a sting operation designed to uncover drug-trafficking activities in Springfield, Illinois. Defendant does not contest that a conspiracy to distribute cocaine existed between his two co-defendants, Robert Bacon and Keith Harris, and an undercover government agent, David Scott. His position is that Scott and Bacon had a deal whereby Bacon would purchase cocaine from Scott in exchange for guns and money. Bacon brought Harris into the conspiracy, and the three men agreed that Bacon, Harris and Harris's buddy (Butler) would meet Scott at the local Best Western parking lot to complete the deal. Butler concedes that he was the buddy in question, but argues that he was not a member of the conspiracy. Rather, as his counsel put it at oral argument, Harris was a wholesaler of cocaine and Butler was a retailer. Butler and Harris had a deal that Harris would resell to Butler the cocaine that Harris intended to purchase from Scott.
 
 
 4
 The four men met at the Best Western parking lot. Defendant does not dispute that he was in the back seat of the car containing Bacon and Harris. Scott was in a Chevrolet Blazer. Bacon and Scott opened the trunk of Bacon's car and Bacon gave Scott the guns contained there. Harris showed Scott the roll of money that constituted the balance of the purchase price. According to Harris, who later testified for the government, Butler handled the money and removed some of it before it was inspected by Scott. Butler disputes this. After Scott took possession of the guns and inspected the money he told Bacon that a courier would arrive with the drugs. Instead, after he returned to his truck Scott signaled the Drug Enforcement Agency ("DEA") agents hidden nearby to move in and arrest the three men.
 
 
 5
 A gun was found on the rear floorboard of Bacon's car. The government claims this gun belonged to Butler, who denies it. In support of its claim the government argues that the gun was found on the left side of the back seat, where defendant had been sitting, and that as the DEA agents approached the car they saw Butler bend down for several seconds out of their view and then sit back up. In addition the government produced a witness who testified that he had seen Butler holding a gun prior to the arrest and that he recognized that gun as one he had previously seen at Butler's house. Defendant, on the other hand, claims that he was not seated on the left but rather on the right side of the back seat. The government provided several witnesses, however, who testified that Butler was on the left side.
 
 
 6
 After the arrest a pager was discovered under the car, which Harris later admitted was his. Defendant's phone number was stored on it. In addition, the arresting officers discovered $2,500 on the back seat of the car, which Harris admitted to be part of the purchase money, and $500 on Butler's person, which Harris claims Butler removed from the roll of money shown to Scott.
 
 Analysis
 I. Sufficiency of the evidence
 
 7
 After viewing the record in the light most favorable to the government, United States v. Goines, 988 F.2d 750, 758 (7th Cir.1993), certiorari denied, 114 S.Ct. 241, we conclude that the evidence was sufficient for a rational trier of fact to find Butler guilty of the three charges.
 
 A. Conspiracy
 
 8
 In order to find Butler guilty of conspiracy, the jury was required to find that a conspiracy existed to distribute cocaine, United States v. Durrive, 902 F.2d 1221, 1225 (7th Cir.1990), and that defendant knowingly joined it, United States v. Gutierrez, 978 F.2d 1463, 1469 (7th Cir.1992). Although there must be substantial evidence connecting Butler to the conspiracy, id. at 1468, this evidence may be wholly circumstantial if it is sufficient to support beyond a reasonable doubt an inference that Butler agreed with the others to distribute drugs. United States v. Burrell, 963 F.2d 976, 988 (7th Cir.1992), certiorari denied, 113 S.Ct. 357.
 
 
 9
 Defendant's main objection to his conviction on the conspiracy count is that Harris, the only person whose direct testimony linked him to the conspiracy, was an unreliable witness. Without Harris' testimony, defendant argues, all the government can show is that he was "present at" the conspiracy, which is not sufficient evidence, standing alone, to demonstrate that he was a member of it. Id. ("[A] defendant's mere knowledge of, approval of, association with, or presence at a conspiracy standing alone is insufficient to establish membership in the conspiracy.") (citations and internal quotation marks omitted).
 
 
 10
 Defendant does not dispute that Harris and Bacon conspired to sell cocaine. Harris testified that his plan was to purchase the cocaine from Scott and resell it to Butler at a profit. He also testified that Butler provided $3,000 purchase money for the cocaine. When Butler heard that the price Scott and Harris had agreed upon was $2,500 he removed $500 from the roll of money shown to Scott. Defendant argues that Harris has demonstrated that he is a liar, that he had a motive to lie in this case, and that his testimony ought not to be believed. But Butler had the opportunity to impeach Harris, and he took it. The jury was aware that Harris had entered an agreement to cooperate with the government. Tr. 228, 258. It was aware that Harris had dealt drugs prior to his involvement in the conspiracy at issue here (Tr. 237, 240, 247, et passim ), and that Harris had used drugs in the past. Tr. 241-242. It was also aware that Harris had attempted to deceive the government both prior to entering the plea agreement, by giving the arresting officers a false name (Tr. 261), and after entering the agreement, by entering into a new drug deal. Tr. 276. The jury also knew that Harris entered the cooperation agreement because he "did whatever it would take for [him] to come out of this, come out of whatever [he was] in now, which is conspiracy" (Tr. 263), that he knew at the time he entered the agreement that Judge Mills had a reputation as a tough sentencer (Tr. 270), that he knew that only a prosecutor could ask for a downward departure on his sentence and only a judge could grant it (id.), and that he wanted to get probation. Tr. 271.[1] In addition, Butler provided his own witness to testify that Harris attempted to persuade Butler to claim that the money found in the back seat on the night of the arrest was his own, and not Harris's. Tr. 524.
 
 
 11
 The jury was aware of all of these things and elected to credit enough of Harris's testimony to conclude that defendant knowingly joined the conspiracy. It is not for this Court to make credibility determinations. That is the province of the jury. United States v. D'Antonio, 801 F.2d 979, 982 (7th Cir.1986). When Harris's testimony is credited by this Court, as it must be in light of the jury verdict, there is sufficient evidence to support the conviction of conspiracy to distribute cocaine.
 
 
 12
 B. Attempt to possess with intent to distribute
 
 
 13
 Although this was not clear in his brief, defendant's position at oral argument was that he meant to challenge the sufficiency of the evidence on the attempt count as well as on the other counts. "To prove [Butler] attempted to possess cocaine with intent to distribute, the government must show: (1) [Butler] acted with the intent to possess cocaine with intent to distribute; and (2) [Butler] engaged in conduct which constitutes a substantial step toward commission of the offense." United States v. Haddad, 976 F.2d 1088, 1094 (7th Cir.1992). The defense conceded at oral argument that the evidence was sufficient to show that Butler intended to retail the cocaine that Harris was going to purchase from Scott. This clearly disposes of the "intent to distribute" part of the count. As for the "attempt to possess" aspect, it is clear from the foregoing facts that there was sufficient evidence for the jury to find that Butler acted with the intent to possess cocaine before reselling it and that he took a substantial step toward so doing.
 
 
 14
 C. Use of a firearm during a drug-trafficking offense
 
 
 15
 In order to find Butler guilty on this count, the jury was required to find that he either used or carried a firearm in relation to the drug-trafficking offense with which he was charged. United States v. Wilson, 938 F.2d 785, 791 (7th Cir.1991), certiorari denied, 112 S.Ct. 946. Harris testified that during the course of the transaction with Scott he saw defendant carrying the gun that was later found by police. Tr. 220. Because the gun was accessible to Butler during the drug transaction, he "used or carried" it within the meaning of the statute. United States v. Cooper, 942 F.2d 1200, 1207 (7th Cir.1991), certiorari denied, 112 S.Ct. 1303.
 
 II. Prejudicial evidence
 
 16
 At trial Harris testified to certain drug transactions that occurred between himself and Butler prior to the time frame alleged in the indictment as encompassing the conspiracy at issue here. Defendant argues that this is evidence of prior bad acts and as such is inadmissible under Fed.R.Evid. 404(b). He is correct that such evidence is inadmissible to "prove the character of a person in order to show that he acted in conformity therewith," id., but this is not the reason the evidence was admitted. Harris's testimony was admitted over defendant's objection not to prove the existence of the conspiracy itself, but rather to show "the context in which the conspiracy took place." Tr. 189. The prosecution argued that if it was not able to contextualize the alleged deal between Harris and Butler concerning an eighth of a kilogram of cocaine, purchase price $3,000, the jury would not credit Harris's testimony about it. The evidence of their past dealings was meant to establish that Butler had both a motive and the opportunity to join the charged conspiracy. As such, it is admissible under Fed.R.Evid. 404(b).
 
 
 17
 Defendant further argues that the testimony, even if admissible under Rule 404(b), was unfairly prejudicial and should have been excluded under Fed.R.Evid. 403. In his brief he does not explicate the nature of the prejudice he believes took place. Presumably he is concerned that the jury did make the prohibited inference that Butler had a bad character and acted in conformity therewith during the alleged conspiracy, despite the fact that Harris's testimony was not admitted for this purpose. But such an objection could be made whenever evidence of prior bad acts is admitted under Rule 404(b). Without a more compelling reason to infer prejudice this Court cannot interfere with the broad discretion of the trial judge, United States v. Roberts, 933 F.2d 517, 519 (7th Cir.1991), to determine whether proffered evidence is prejudicial. In addition, the Court notes that the prosecution tendered a jury instruction that would have explicitly forbidden it from making the prohibited inference. The defense, for reasons of trial strategy, elected to forgo this instruction. Had it been made, we would be obliged to assume the jury obeyed it. See, e.g., Gacy v. Welborn, 994 F.2d 305, 313 (7th Cir.1993), certiorari denied, 114 S.Ct. 269. This Court cannot allow the defense to refuse the instruction and then argue that the jury reasoned improperly.
 
 
 18
 Because the evidence of defendant's prior dealings with Harris made the existence of a material fact (the deal between Butler and Harris concerning the eighth of a kilogram of cocaine) more probable, the evidence was relevant. Fed.R.Evid. 401. As such, it was admissible unless there is some other reason to exclude it. Fed.R.Evid. 402. This evidence was admissible under Rule 404(b) and its probative value was not substantially outweighed by the danger of unfair prejudice. Fed.R.Evid. 403. Therefore, Harris's testimony was properly admitted.
 
 III. Immunity agreement
 
 19
 Defendant entered a cooperation agreement with the government, under which the government agreed to grant him use and derivative use immunity in exchange for his provision of "complete and truthful" information. R. 29 at app. p 1. Defendant makes several arguments concerning this agreement. First, he argues that the government did not meet its burden of demonstrating the independent nature of the evidence used against him at trial. But it appears from the record that all of the evidence utilized by the prosecution at trial was obtained prior to the government's interviews with Butler pursuant to his cooperation agreement. R. 29 at paragraphs 6-7, et seq.; R. 31. Thus it necessarily had a source independent of Butler's statements.
 
 
 20
 In addition, defendant argues that information provided by him pursuant to the agreement was included in his presentence report, contrary to the agreement's provision that such information would not be used at his sentencing. However, the contract between Butler and the government specifically allowed it to "discharge its duty to the court by informing the court of any information" he provided. R. 29 at app. p 1. In accordance with that paragraph the government did disclose to the court in the presentence report that the information included was obtained pursuant to a grant of use immunity. Furthermore, that information was not utilized in calculating Butler's sentencing guidelines. R. 45 at p 4.
 
 
 21
 Finally, defendant argues that the government utilized statements that he had made pursuant to the cooperation agreement in response to his motion for a new trial. In that motion defendant proffered evidence that Bacon, who had not testified at Butler's trial, would testify in his favor at a new trial. The prosecution responded with statements that defendant had made pursuant to his cooperation agreement that conflicted with those offered by Bacon. However, it is clear that Bacon's proffered testimony would not have contradicted the testimony of Harris and the other witnesses for the prosecution (R. 56 at ex. A), and therefore would not probably lead to an acquittal in the event of a retrial. Cf. United States v. Oliver, 683 F.2d 224, 228 (7th Cir.1982). The motion for a new trial was properly denied without reference to any of Butler's immunized statements.
 
 IV. Denial of a fair trial
 
 22
 Defendant argues generally that he was denied a fair trial. As counsel conceded at oral argument, because he does not support this claim with any citations to the record the matter is waived. A review of the issues that Butler alludes to in support of this claim, however, indicates that he was in no way denied a fair trial.
 
 Conclusion
 
 23
 For the foregoing reasons, the judgment entered on the jury verdict, and the sentence imposed thereon, is affirmed.
 
 
 
 *
 Hon. James B. Zagel, Northern District of Illinois, sitting by designation
 
 
 [1]
 The record does not indicate what sentence Harris in fact received