79 F.3d 1150
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Maurice TAYLOR, Defendant-Appellant.
 No. 95-2726.
 United States Court of Appeals, Seventh Circuit.
 Argued Jan. 4, 1996.
Decided March 18, 1996.
Rehearing Denied April 9, 1996.
 
 Before ILANA DIAMOND ROVNER, DIANE P. WOOD, and EVANS, Circuit Judges.
 
 ORDER
 
 1
 On September 19, 1994, at approximately 1:30 p.m., James Taylor entered the Badger State Bank in Milwaukee, Wisconsin, approached a teller, and asked if he could cash a payroll check. He was advised that in order to cash a check he had to first open an account. Lacking proper identification to open an account, Taylor left the bank. Did he return an hour and a half later and rob the bank? That was the issue at his trial. Taylor argued he did not; a jury said he did. They found him guilty on two counts--armed bank robbery in violation of 18 U.S.C. § 2113 and using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). He was sentenced to a term of 123 months imprisonment. In this appeal, Taylor contends that the evidence was insufficient to support his conviction and the trial judge failed to properly instruct the jury.
 
 
 2
 At around 3:05 p.m. on September 19, two men armed with handguns robbed the Badger State Bank, located at 7927 West Capitol Drive in Milwaukee, Wisconsin. They made off with $3,248. Taylor conceded at trial that he was in the bank on the day of the robbery. Juanita Manning, a teller at the bank, testified that Taylor walked up to her and asked if he could cash a payroll check. Manning advised Taylor that in order to cash a check he would need to open an account. Manning directed Taylor to a personal banker, Ellen Nickolai, and then to bank manager Lyneen Burazin Fischer, to open an account. Taylor did not have either a payroll check or identification with him and was told to come back with the check and proper identification to open an account.
 
 
 3
 Taylor's actions while in the bank and when leaving were suspicious. Manning, who was observing Taylor leave the bank, had expected to see Taylor--who told her he was a high school student--catch the bus on the corner, outside the bank. Instead, Taylor crossed the street at mid-block and entered the passenger side of a car which was waiting on the side of a restaurant across the street. Manning thought it suspicious that the car had not parked in the bank parking lot, or on the street directly in front of the entrance to the restaurant.
 
 
 4
 As bank personnel watched, the vehicle with Taylor in it came across the street and slowly passed the bank. The bank manager, Fischer, took note of the driver, whom she subsequently identified as Ramone Sloan, and the make and license plate of the vehicle--a red Oldsmobile Ninety-Eight, license plate number LJR 595.
 
 
 5
 Eugene Schultist, who lives approximately six houses south of the bank, testified that at about 3 p.m. on September 19, 1994, he observed a maroon Oldsmobile Ninety-Eight moving back and forth in an alley just south of the bank. He recorded the license plate of the vehicle as LRJ 595.
 
 
 6
 Meanwhile, back at the bank at around 3 p.m., teller Manning was assisting a customer, Miguel Whittington, when two black males walked in the front door of the bank. They suddenly began waving handguns, shouting obscenities and ordering everyone to get down. Manning testified that as she turned to face the commotion, a black male with sunglasses pointed a gun at her and told her to get down. She initially froze, but as she attempted slowly to get down she saw a second bank robber coming over the top of the counter toward her. Manning testified that she looked right into the second robber's face and recognized him as the would-be customer who was in the bank earlier in the day. She particularly noted his eyes, his build, and his clothes. Next she identified bank surveillance photographs taken at 1:30 p.m. as the same person who robbed the bank at 3:05 p.m.
 
 
 7
 Fellow bank employee Nickolai testified about a similar experience. When the robbers first came to the bank door, she looked up from her work and immediately recognized Taylor as one of the robbers. She also identified Taylor as the person depicted in the surveillance photograph of the would-be customer taken at 1:30 that same day.
 
 
 8
 Bank customer Whittington testified that in response to the commotion at the front of the bank, he looked over his shoulder and was confronted by a young black male in sunglasses holding a handgun. Whittington later identified a photograph of Ramone Sloan as this robber. The bank manager, Fischer, was standing in her office when the robbers entered; she also identified Ramone Sloan, from a photograph display and a line-up, as the robber who confronted Whittington.
 
 
 9
 After emptying several teller drawers, the robbers left the bank, heading south through the alley. At or near the time of the robbery, Theodora Felix, who lives south of the bank, observed two individuals running in the alley from the direction of the bank. She observed them run toward a maroon car, and as the car pulled away she noted, and later wrote down, the license number. She recorded the number as LRJ 595, but testified that she may have mixed up the first three numbers.
 
 
 10
 Lawanda Rogers testified that on September 19, 1994, she lived on 13th Street in Milwaukee. She knew Ramone Sloan because he lived on her street. She testified that during the summer of 1994 she saw Sloan approximately three times a week, and that every time she saw Sloan, she saw another individual, J.T., whom she later identified as Taylor. Rogers testified that on the day of the robbery she saw Taylor and Sloan sitting together in a red car on her street, near 13th Street and Atkinson, between 12:30 p.m. and 2:30 p.m. She recalled that Sloan was in the driver's seat and Taylor in the passenger's seat. Later that afternoon, sometime after 3 p.m., Rogers said she saw Taylor and Sloan again in the same car on the same street. Rogers identified this car in photographs at trial, which Fischer also testified were photographs of the maroon Olds Ninety-Eight she observed Taylor and Sloan in outside the bank at 1:30 p.m., and which Schultist also observed moving back and forth in the alley south of the bank at approximately 3 p.m., at or near the time of the robbery.
 
 
 11
 In challenging the sufficiency of the evidence, Taylor bears a heavy burden. United States v. Gutierrez, 978 F.2d 1463, 1468 (7th Cir.1992). When reviewing a conviction for sufficiency of the evidence, our role is limited. It is not our function to reweigh the evidence, nor substitute our judgment for that of the factfinder. United States v. Hatchett, 31 F.3d 1411, 1416 (7th Cir.1994). We consider the evidence in the light most favorable to the prosecution, making all reasonable inferences in its favor, and will affirm the conviction so long as any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). Reversal is warranted "only when the record is devoid of any evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt." United States v. Garcia, 35 F.3d 1125, 1128 (7th Cir.1994) (quoting United States v. Gutierrez, 978 F.2d 1463, 1468-69 (7th Cir.1992)).
 
 
 12
 Taylor argues that no one at trial testified that he was the individual that robbed the bank. He conveniently omits, however, the fact that Manning and Nickolai identified bank surveillance photographs, taken around 1:30 p.m. on the afternoon of the robbery, as pictures of one of the bank robbers. Taylor told police that he was the individual who had been in the bank at about 1:30 p.m. Taylor challenges the witnesses' testimony that identified him as one of the robbers as incredible. The issue of witness credibility was decided by the jury and is not for this court. Furthermore, circumstantial evidence presented to the jury placed Taylor, and his accomplice Sloan, in a maroon Olds Ninety-Eight at 1:30 p.m., before the robbery; put Sloan in the bank as the second robber at around 3 p.m.; put the maroon Olds Ninety-Eight fleeing the scene of the robbery at around 3 p.m.; and put Taylor and Sloan in the Olds Ninety-Eight in Sloan's neighborhood on two separate occasions, between 12:30 p.m. and 2:30 p.m., and again sometime after 3 p.m. In sum, we find the identification testimony, the circumstantial evidence relating to the maroon Olds Nintey-Eight, and the reasonable inferences to be drawn therefrom, to be more than substantial and much more than sufficient to sustain the jury's finding of guilt beyond a reasonable doubt.
 
 
 13
 The primary focus of Taylor's appeal is his assertion that the trial court erred in refusing to give his proffered alibi and prior inconsistent statements instructions. It is undisputed that the defendant has the right to have the jury consider any theory of defense which is supported by law and by some evidence in the record. United States v. Boucher, 796 F.2d 972, 975 (7th Cir.1986). However, the defendant is entitled to an instruction on his theory only if he can show that: (1) the proposed instruction is a correct statement of the law; (2) the theory of defense is supported by the evidence; (3) the theory of defense is not part of the charge; and (4) the failure to include an instruction on the defendant's theory of defense in the jury charge would deny him a fair trial. United States v. Douglas, 818 F.2d 1317, 1320-21 (7th Cir.1987).
 
 
 14
 Taylor contends first that the trial court's failure to give his proffered prior inconsistent statements instruction was erroneous. He asserts that the instruction was essential because the credibility of witnesses Manning and Nickolai--whose trial testimony he claims was impeached by their statements made immediately after the robbery--was central to the case. Taylor's argument on this issue is little more than "quibbling."
 
 
 15
 The purported inconsistency arises from Manning's testimony that during the robbery Taylor's jacket was partially unzipped, revealing his shirt. She testified that she recognized the robber's shirt as the same as that worn by Taylor when he was in the bank earlier in the day. On cross-examination, defense counsel elicited from Manning a comment that she did not tell the detective who took her statement after the robbery about the unzipped jacket. Manning also testified, however, that the detective never asked her whether the jacket was partially unzipped.
 
 
 16
 Similarly, as to Nickolai, Taylor contends that her testimony was inconsistent with the statement she gave to police immediately after the robbery. She testified that she recognized one of the robbers as the young man who had been in the bank earlier and did so based in part on his shirt. On cross-examination, Nickolai acknowledged that she had told the police detective that there were three black males who entered the bank around 3 p.m. and that she had not told the detective about recognizing one of them. Nickolai also testified, however, that she did not remember what she told the detective and did not recall him asking her if she recognized any of the robbers.
 
 
 17
 The instruction Taylor proposed concerns discrediting a witness's testimony because prior contradictory statements indicate that the trial testimony is false. Although the proposed instruction is a correct statement of law, his theory of defense, which rested on the credibility of these witnesses, was not supported by the evidence. Examining the record, the differences in the witnesses' testimony and prior statements were, at best, minor, and in any event they do not even remotely suggest that the trial testimony was false. Furthermore, because the instruction reflects a theory that was part of the charge actually given the jury--instructions on credibility of witnesses and reliability and credibility of eyewitness identification--we cannot conclude that the failure to include the instruction denied Taylor a fair trial. Douglas, 818 F.2d at 1321.
 
 
 18
 Defendant argues next that the trial court erred in not giving his proffered alibi instruction. He asserts that Rogers testified that she saw Taylor sometime after 3 p.m. on the afternoon of the robbery on her street, 13th Street, which is located over sixty blocks from the bank on Capitol Drive and 79th Street. Thus, he could not have been at the scene of the robbery. Taylor was not entitled to an alibi instruction because, as the trial court correctly determined, it was not supported by the evidence. Rogers testified that she saw Taylor and Sloan in a maroon Olds Ninety-Eight on the day of the robbery, first between 12:30 p.m. and 2:30 p.m., and then later that day around 3 p.m. or sometime after. Testimony from multiple witnesses placed Taylor, Sloan, and the Olds Ninety-Eight at or around the scene of the robbery at the time it occurred. Finally, since it was incumbent upon the jury to find beyond a reasonable doubt that Taylor was actually at the scene of the robbery, failure to give the alibi instruction did not deny him a fair trial. See Alicea v. Gagnon, 675 F.2d 913, 926 (7th Cir.1982) ( [s]ince the jury was informed that [defendant's] presence was necessary for conviction, nothing would have been added by instructing that his absence would require reversal").
 
 
 19
 For these reasons, the judgment of conviction of the district court is AFFIRMED.