986 F.2d 1425
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Yassin M. HUSSEIN, Defendant-Appellant.
 No. 92-2080.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 18, 1992.
Decided Feb. 10, 1993.
 
 Before BAUER, Chief Judge, and RIPPLE and ILANA DIAMOND ROVNER, Circuit Judges.
 
 ORDER
 
 1
 A jury convicted Yassin Hussein on one count of conspiracy to "launder" drug proceeds and two counts of laundering drug proceeds through automobile transactions conducted at the dealership where he was employed. See 18 U.S.C. §§ 371, 1956 (a)(1)(B)(i), 2. Judge Evans sentenced Hussein to thirty-seven months' imprisonment, the low end of the sentencing Guideline range. Hussein challenges his conviction on the basis of insufficient evidence. He also claims that the district court mistakenly believed that it lacked authority to depart downward from the applicable Sentencing Guideline range in order to render his sentence comparable to those imposed on similarly situated co-conspirators. For the reasons stated below, we affirm.
 
 I. BACKGROUND
 
 2
 Anthony Glapa, Harry Mazurkiewicz, and Robert Turner were involved in a large-scale marijuana distribution operation when they purchased several cars from Hussein, a salesperson at the Ernie Von Schledorn automobile dealership ("EVS") in Milwaukee, Wisconsin. In arranging the transaction, Hussein explained that cars could be placed in the names of others in order to conceal the inability of customers to demonstrate a legitimate source of income. He also indicated that such customers could avoid filing reports with the Internal Revenue Service by paying him no more than $10,000 at a time.
 
 
 3
 The evidence at trial revealed that Hussein often went beyond what would be expected of a salesperson to maintain even a "preferred customer" such as Glapa. Not only was Hussein paid by Glapa for arranging car sales in the names of nominee buyers, but he also received compensation for negotiating checks made payable to Glapa and for arranging vehicle rentals that were used as "load" cars to transport marijuana.
 
 II. ANALYSIS
 
 4
 We first address Hussein's challenge to the sufficiency of the evidence to support his conviction. In reviewing a sufficiency of the evidence claim, we consider all the evidence and draw all reasonable inferences from that evidence in the light most favorable to the government. United States v. Haddad, 976 F.2d 1088, 1094 (7th Cir.1992); United States v. Herrero, 893 F.2d 1512, 1531 (7th Cir.), cert. denied, 496 U.S. 927 (1990). The conviction must be affirmed unless the record is barren of any evidence, regardless of its weight, from which any rational jury could have found the essential elements of the crime beyond a reasonable doubt. United States v. Villasenor, 977 F.2d 331, 335 (7th Cir.1992); United States v. Atterson, 926 F.2d 649, 655 (7th Cir.), cert. denied, 111 S.Ct. 2909 (1991); Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 5
 A. Money Laundering Conviction under 18 U.S.C. § 1956(a)(1)(B)(i)
 
 
 6
 To establish a violation of 18 U.S.C. § 1956(a)(1)(B)(i), the government must prove:
 
 
 7
 (1) that the defendant took part in a financial transaction involving the proceeds of specified unlawful activity;
 
 
 8
 (2) that the defendant knew that the property involved was the proceeds of specified unlawful activity; and
 
 
 9
 (3) that the defendant knew that the transaction was designed, in whole or in part, ... to (a) conceal or disguise the proceeds....
 
 
 10
 United States v. Antzoulatos, 962 F.2d 720, 724 (7th Cir.), cert. denied, 113 S.Ct. 331 (1992); United States v. Kaufmann, No. 92-1463, slip op. at 7 n. 2 (7th Cir. Feb. 2, 1993) (citing United States v. Jackson, 935 F.2d 832, 838-39 (7th Cir.1991) and United States v. Brown, 944 F.2d 1377, 1387 (7th Cir.1991)). Hussein argues that the government failed to prove that he knew the money came from unlawful activities and that he knew the various transactions were designed to conceal the nature of the proceeds. We address each contested element in turn below.
 
 1. Knowledge of Illegal Source of Money
 
 11
 a. Direct Knowledge
 
 
 12
 Each of the convicted drug dealers offered testimony suggesting that Hussein knew of the illegal source of the proceeds. Hussein argues that inconsistencies in the testimony of these witnesses renders the evidence incredible and therefore insufficient to establish that he knew the money was derived from drug sales. However, inconsistencies in a witness' testimony do not render the testimony legally incredible. Villasenor, 977 F.2d at 335 (citing United States v. Dunigan, 884 F.2d 1010, 1013 (7th Cir.1989). Moreover, because credibility assessments are within the province of the jury, it is not our function to reweigh the evidence and make our own final determination regarding the credibility or the weight of any particular witness' testimony. Id.; United States v. Gutierrez, 978 F.2d 1463, 1469 (7th Cir.1992). The jury heard the conflicting testimony and was charged with responsibility to assess witness credibility, to weigh the defendant's arguments, and to assess Hussein's knowledge. See Villasenor, 977 F.2d at 335. In finding Hussein guilty, the jury presumably believed the testimony of the three convicted drug dealers and concluded that Hussein was aware that the money used to purchase the cars was tainted.
 
 
 13
 b. Conscious Avoidance
 
 
 14
 Aside from direct evidence of Hussein's knowledge, there is also circumstantial evidence suggesting that Hussein could have remained ignorant of the illegal source of the money only through wilful blindness or conscious avoidance. We acknowledge that mere suspicion, in the absence of showing that Hussein knew something more about the transaction or its surrounding circumstances, is insufficient to establish knowledge. Antzoulatos, 962 F.2d at 725 n. 3.[1] However, in light of his overall dealings, the evidence demonstrates that Hussein was aware of the illegal nature of the transactions that he agreed to conduct on behalf of Mazurkiewicz, Turner, and Glapa.
 
 
 15
 In Antzoulatos, a case factually similar to this one, we applied the money laundering statute to a car dealer who was not directly involved in drug dealing and concluded that "wilful blindness or conscious avoidance" is equivalent to knowledge for the purpose of § 1956(a)(1)(B). 962 F.2d at 724. Antzoulatos sold cars to several individuals who were involved in selling cocaine and titled the cars in names of individuals other than the drug dealers. Although Antzoulatos pleaded guilty to conspiring to launder money, he denied knowing that these individuals were drug dealers or that the mistitling was done to hide drug proceeds.
 
 
 16
 In this context we considered how a merchant "knows" that a transaction is being consummated with tainted money when he or she has not been involved in the underlying criminal activity. Antzoulatos, 962 F.2d at 726. Review of the facts revealed that Antzoulatos was "closely linked to the drug dealers with whom he dealt." Id. at 727. He allowed one dealer access to the company's checks and also allowed the dealer to repay him in cash in order to avoid currency transaction requirements. He also mistitled "scores" of cars over a period of years.[2] The court therefore concluded that, "any lack of actual knowledge on Antzoulatos' part amounted at a minimum to wilful blindness or conscious avoidance." Id. at 724.
 
 
 17
 As in Antzoulatos, we find the evidence sufficient to prove that Hussein, if he did not actually know that he was dealing with drug-tainted money, wilfully or deliberately blinded himself to that fact. Each of the vehicles purchased from Hussein between 1987 and 1990 was sold and titled in the name of a nominee buyer. Although the initial sales used family members as nominees, after the management at EVS questioned Hussein about these transactions subsequent purchases were placed in the name of non-family member nominees. Indeed, on at least two occasions, Hussein agreed to have cars owned by Glapa titled in his name. Both of these cars were eventually signed over to a Texas marijuana dealer named Carlos Sosa. On another occasion, Hussein arranged to have a friend serve as a nominee buyer. When the friend became nervous about liability and backed out of the arrangement, Hussein placed the car in his own name and delivered it to Glapa.
 
 
 18
 There is nothing magical, of course, in the number of illegal transactions. Rather, it is the transactions when viewed in context of the circumstances that allow a finding of willful blindness. See id. at 727 n. 4. Thus, we reject Hussein's suggestion that six transactions is not enough to allow an inference of a culpable mental state. We also find no merit in the factual distinction he attempts to draw between a guilty plea, which underlay Antzoulatos' conviction, and a jury determination of guilt, where there is sufficient evidence to support the jury's conclusion that Hussein knew the car purchases were designed to disguise drug proceeds.
 
 
 19
 Furthermore, although the use of nominee buyers is not illegal per se, Antzoulatos, 962 F.2d at 727 n. 4, Hussein's situation is more akin to the "typical money laundering transaction" in which a third party makes a car purchase in an attempt to conceal the buyer's identity. United States v. Sanders, 929 F.2d 1466, 1472 (10th Cir.), cert. denied, 112 S.Ct. 143 (1991).[3] Here, the use of nominee buyers coupled with the fact that the purchase contracts, titles, and payment receipts all reflected the name of the nominee buyer, when Glapa actually was signing the contracts and paying for the cars in cash, might be insufficient by themselves to support the conviction. However, in light of the other evidence, it was not improper for the jury to consider the repeated use of third-party nominees as evidence of conscious avoidance or wilful blindness.
 
 2. Knowledge of Intent to Conceal
 
 20
 A conviction for money laundering requires knowledge not only that the money derives from illegal activity, but also that the transaction was, in whole or in part, designed "to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity." 18 U.S.C. § 1956(a)(1)(B)(i).[4] Where the statute is applied to a party other than the drug dealer, satisfaction of the knowledge requirements becomes complicated:
 
 
 21
 A drug dealer, if convicted on both a narcotics count and a money laundering count, by hypothesis knows that he is using tainted proceeds in the transaction, and also knows that his purpose is to conceal the nature or source of the proceeds. The merchant, on the other hand, has not been involved with the proceeds prior to the transaction.
 
 
 22
 The question therefore arises: how does the merchant "know" that a transaction is being consummated with tainted money and further know that the purpose is to conceal something about that money? It presumably would be sufficient when the merchant personally observes the unlawful activity and sees that the proceeds are being used to buy goods from him. It also is presumably sufficient if the buyer says directly to the merchant: "this money is tainted." More problematic is asking the merchant to rely on the word of the third persons, who may or may not be believable. Also problematic is permitting the merchant to rely on the appearance of a buyer, or on the presence of unexplained wealth.
 
 
 23
 Antzoulatos, 962 F.2d at 726-27.
 
 
 24
 In this case, the evidence supports the inference that Hussein knew both that the money was derived illegally and that the automobile purchases were designed to conceal the taint. Accordingly, although Hussein was not himself a drug dealer, he may be held to account for the efforts to launder the drug proceeds.
 
 
 25
 We have already considered Hussein's knowledge that the purchase money had an illegal genesis. As set forth above, the evidence offered at trial demonstrated that Hussein had direct knowledge of the unlawful source of the money. At the same time, the circumstances surrounding the car purchases and his overall dealings with Glapa also support the conclusion that any lack of actual knowledge amounted at minimum to wilful blindness or conscious avoidance.
 
 
 26
 In addition, the evidence is sufficient to allow a finding that Hussein had knowledge of Glapa's intent to conceal.[5] The same facts which established this knowledge suffice to demonstrate knowledge of Glapa's intent to conceal. See Campbell, 977 F.2d at 857-58 (if defendant knew of the illegal source of the money, the fraudulent nature of the transaction itself is a sufficient basis from which a jury could infer the defendant's knowledge of the transaction's purpose). Glapa paid for the cars in cash and signed the purchase agreements; yet each of the cars was titled in the name of a nominee buyer. Indeed, Hussein himself served as the nominee on at least two occasions. Under these circumstances, one may reasonably conclude that Hussein knew not only that the purchase money was tainted, but that Glapa acted with an intent to conceal the source of the funds.
 
 
 27
 Hussein was convicted on two money laundering counts. The first, count three of the indictment, involved the sale of a 1988 Pontiac Firebird GTA. Evidence of multiple cash payments of less than $10,000 suggests that this transaction was structured in an unusual way in order to avoid currency reporting requirements. Originally, Hussein arranged to have a friend serve as the nominee, but he later served as the nominee himself. Additional evidence showed that Hussein ultimately signed the title over to Carlos Sosa at Glapa's direction as payment for marijuana. The second substantive money laundering conviction involved the sale of a 1989 Camaro Iroc, which was the subject of count five of the indictment. This sale was similarly structured. Cash payments were made by Glapa in amounts under $10,000, again to avoid filing currency reports. Initially Glapa had the car placed in his wife's name, but later asked Joseph Chartier, a co-conspirator, to serve as the nominee. Hussein was paid between $1,000 and $1,500 by Glapa for arranging the nominee transfer. This car was also eventually signed over to Carlos Sosa in exchange for marijuana. Viewed in the light most favorable to the prosecution and drawing all reasonable inferences therefrom, this evidence is sufficient to support the conviction of Hussein on both substantive money laundering counts.
 
 B. Conspiracy
 
 28
 Hussein also challenges his conspiracy conviction. To prove that a defendant was a member of a conspiracy, we require substantial evidence that the defendant knew of the illegal objective of the conspiracy and that he intended to join and associate himself with its criminal design and purpose. Villasenor, 977 F.2d at 335; United States v. Curry, 977 F.2d 1042, 1053 (7th Cir.1992); United States v. Burrell, 963 F.2d 976, 987 (7th Cir.1992); United States v. Jackson, 935 F.2d 832, 843 (7th Cir.1991); United States v. Durrive, 902 F.2d 1221, 1228-29 (7th Cir.1990). Because conspiracies are secretive by nature, "circumstantial evidence and reasonable inferences drawn therefrom concerning the relationship of the parties, their overt acts, and the totality of their conduct" may be relied on to support the conviction. Durrive, 902 F.2d at 1229; see also Herrero, 893 F.2d at 1531-32; United States v. Mealy, 851 F.2d 890, 896 (7th Cir.1988).
 
 
 29
 Hussein's first contention is that he had no knowledge of the conspiracy and, therefore, could not have associated himself with its criminal purpose. In considering this argument, we must decide whether the evidence would allow a reasonable jury to infer a single agreement amoung the defendants. United States v. Aquilla, 976 F.2d 1044, 1050 (7th Cir.1992); United States v. Townsend, 924 F.2d 1385, 1390 (7th Cir.1991). "If the evidence indicates that a defendant must have known that his actions were benefiting a larger conspiracy, he may be said to have agreed to join that conspiracy." Townsend, 924 F.2d at 1390.
 
 
 30
 Hussein appears to argue that the only overt act attributed to him in the indictment was an aborted purchase of a 1989 Corvette which occurred after March 1989. If involved in the conspiracy at all, he contends that it was only to the extent of this transaction. In this case, the government elicited testimony from the three convicted drug dealers with whom Hussein allegedly conspired. All three testified that Hussein knew that the money involved in each of these transactions came from drug sales. Any lack of credibility or inconsistencies in their testimony was for the jury to resolve. Gutierrez, 978 F.2d at 1469 (citing United States v. de Soto, 885 F.2d 354, 367 (7th Cir.1989)). Viewing the evidence in the light most favorable to the government, we conclude there was substantial evidence from which any rational jury could conclude beyond a reasonable doubt that Hussein knew of the conspiracy to launder drug proceeds through vehicle purchases and that as early as 1987, he agreed to participate in the achievement of the conspiracy's criminal objective by facilitating these transactions.
 
 
 31
 Additionally, the record is devoid of any evidence that Hussein took affirmative action to withdraw from the conspiracy. See United States v. Schweihs, 971 F.2d 1302, 1323 (7th Cir.1992); United States v. Patel, 879 F.2d 292, 294 (7th Cir.1989), cert. denied, 494 U.S. 1016 (1990); Curry, 977 F.2d at 1053 (parties may withdraw from a conspiracy at any time without affecting the fundamental nature of the conspiracy). Thus, Hussein remained liable for the conduct his co-conspirators committed in furtherance of the conspiracy. United States v. Jewel, 947 F.2d 224, 231 (7th Cir.1991); Mealy, 851 F.2d at 897; see Pinkerton v. United States, 328 U.S. 640 (1946).
 
 
 32
 For these reasons, Hussein's conviction on all counts is upheld.
 
 C. Sentencing
 
 33
 Finally, we address Hussein's claim that the district court mistakenly believed that it lacked the authority to depart downward from the applicable Guideline range. Departures from the Sentencing Guidelines are permitted only in atypical cases. A district court is not permitted to sentence below the applicable Guideline range unless it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by ... the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); see U.S.S.G. § 5K2.0. Hussein argues that the district court erred in refusing to consider as a mitigating circumstance the lighter sentences his co-conspirators received after pleading guilty. The district court rejected Hussein's request to depart downward and sentenced him to thirty-seven months' imprisonment, the low end of the applicable sentencing Guideline range.
 
 
 34
 A district court's refusal to depart downward is not reviewable unless based on an incorrect application of the Guidelines, or an erroneous conclusion of law. United States v. Shetterly, 971 F.2d 67, 76 (7th Cir.1992); United States v. Franco, 909 F.2d 1042, 1045 (7th Cir.1990). Where the court's decision reflects an exercise of judicial discretion, it is not subject to review. United States v. Helton, 975 F.2d 430, 434 (7th Cir.1992); United States v. Poff, 926 F.2d 588, 590-91 (7th Cir.), cert. denied, 112 S.Ct. 96 (1991); United States v. Franz, 886 F.2d 973, 977-80 (7th Cir.1989); 18 U.S.C. § 3742(a)(1). Hussein asserts that this court has jurisdiction to review the refusal to depart because the district court mistakenly believed that it lacked the authority to depart. In support of this argument, Hussein relies on Judge Evans' statement at sentencing:
 
 
 35
 I think that a sentence would be adequate to reprimand your illegal activity in this case if the sentence were somewhere in the range of a year to 18 months in prison or something in that area. That would be enough. More than enough. But in this case under the guidelines I have to impose a different sentence.
 
 
 36
 (Sentencing Tr. 50-51).
 
 
 37
 We have previously rejected the argument that disparity in co-conspirators' sentences alone is sufficient to demonstrate an abuse of discretion. United States v. Morris, 957 F.2d 1391, 1403 (7th Cir.1992); United States v. Edwards, 945 F.2d 1387, 1398 (7th Cir.1991), cert. denied, 112 S.Ct. 1590 (1992); United States v. Threw, 861 F.2d 1046, 1049 (7th Cir.1988). "If the sentence imposed upon a particular defendant falls within the applicable Guideline [range], then it will not be overturned on the ground that another defendant was sentenced differently." Edwards, 945 F.2d at 1389 (citing United States v. Guerrero, 894 F.2d 261, 267 (7th Cir.1990)). In Edwards, we considered whether the district court erred in sentencing co-conspirators who were tried on the basis of a higher quantity of drugs than the amount used to calculate the sentences of others who entered into plea agreements. Before reviewing the calculation of the base offense levels for each of the defendants, we noted that it was not necessary to determine whether the district court correctly calculated the base offense level of those who pleaded guilty because "disparity between sentences does not provide a basis for resentencing." Id. at 1397-98.
 
 
 38
 In order to depart under section 5K2.0, there must be something unique or special about the defendant or the crime committed that distinguishes the case. Without some unique distinguishing factor, "equalization of sentences within a single case is not, and by itself cannot be, 'an aggravating or mitigating circumstance.' " United States v. Wogan, 938 F.2d 1446, 1449 (1st Cir.), cert. denied, 112 S.Ct. 441 (1991); United States v. Johnson, 908 F.2d 396, 399 (8th Cir.1990). Hence, the desire to equalize sentences standing alone is an impermissible basis for departure from a properly calculated Guideline sentencing range. See United States v. Monroe, 943 F.2d 1007, 1017 (9th Cir.1991), cert. denied, 112 S.Ct. 1585 (1992); Wogan, 938 F.2d at 1448 (equalization of sentences for "similarly situated codefendants, without more, will not permit a departure from a properly calculated sentencing range"). Moreover, at least one other circuit has rejected the very argument Hussein makes. United States v. Sanchez-Solis, 882 F.2d 693, 699 (2d Cir.1989) (disparity in sentences between a co-defendant who pleaded guilty and a co-defendant who was tried does not violate 18 U.S.C. § 3553(a)(6) which seeks to avoid "unwarranted sentence disparities").
 
 
 39
 Judge Evans concluded that "[i]t is my view that what has happened to Julie and Leon Glapa and Anthony Glapa would not be a legally justifiable basis for departure under the guidelines in this case." (Tr. 50). Clearly, the judge was aware of his authority to depart under section 5K2.0 but correctly determined that sentence disparity alone did not warrant departure. The district court's decision was not based on an erroneous conclusion of law and, therefore, is not reviewable. "So long as a sentence is lawfully imposed and the Guidelines are applied correctly a defendant has nothing left to appeal." United States v. Welch, 945 F.2d 1378, 1387 (7th Cir.1991) (quoting United States v. Lueddeke, 908 F.2d 230, 235 (7th Cir.1990), cert. denied, 112 S.Ct. 1235 (1992).
 
 III. CONCLUSION
 
 40
 Substantial evidence supports Hussein's convictions for money laundering and conspiring to launder drug proceeds. The district court did not err when it refused to depart downward from the applicable sentencing Guideline range.
 
 
 41
 AFFIRMED.
 
 
 
 [1]
 There is sufficient evidence to distinguish Hussein's situation from the example noted in Antzoulatos: " '[A]n automobile car dealer who sells a car at market rates to a person whom he merely suspects of involvement with crime, cannot be convicted of this offense in the absence of a showing that he knew something more about the transaction or the circumstances surrounding it.' " 962 F.2d at 725 n. 3 (quoting S.Rep. No. 443, 99th Cong., 2d Sess. 9-10 (1986))
 
 
 [2]
 Although buying a car and titling it in another person's name is not illegal per se, the mistitling of cars was deemed relevant in Antzoulatos "only because of the number of incidents involved and only then when viewed in conjunction with the other facts of this case." 962 F.2d at 727 n. 4
 
 
 [3]
 Under the circumstances of this case, Hussein's conduct is also distinguishable from that of the real estate agent in United States v. Campbell, 777 F.Supp. 1259 (W.D.N.C.1991) (cited with approval in Antzoulatos, 962 F.2d at 727)), aff'd in part and rev'd in part, 977 F.2d 854 (4th Cir.1992). Hussein's involvement in numerous transactions, structured to avoid IRS reporting requirements, contrasts with the single real estate transaction in Campbell
 
 
 [4]
 A conviction for money laundering under 18 U.S.C. § 1956(a)(1)(B) requires proof that the defendant knew that the financial transaction was designed to conceal or disguise the source of the unlawful proceeds. This differs from a conviction of attempted money laundering under section 1956(a)(3)(B), which requires proof that the defendant intended to conceal the source or ownership of the drug proceeds. Kaufmann, slip op. at 16
 
 
 [5]
 When applied to one other than the drug dealer, the money laundering statute does not require proof that the defendant had the intent to conceal, rather the relevant question is whether the defendant had knowledge of the drug dealer's intent to conceal. United States v. Campbell, 977 F.2d 854, 857 (4th Cir.1992). That Glapa harbored such an intent is an assumption we may reasonable make. Glapa necessarily knew that the transactions involved tainted proceeds, for he was directly involved in the marijuana sales which yielded those proceeds. Antzoulatos, 962 F.2d at 726. Likewise, Hussein participated in these transactions with actual or constructive knowledge that they involved tainted proceeds